G. Dudley HOLMES, Petitioner,

v.

William E. GAMBLE, M.D. and Carl F. Heaton, M.D., Respondents.

No. 80SC361.

Supreme Court of Colorado, En Banc.

Dec. 20, 1982.

Dufty, Schoenwald & Hultin, Lawrence J. Schoenwald, Denver, for petitioner.

Johnson, Mahoney & Scott, P.C., Paul E. Scott, Brian J. Lampert, Denver, for respondent Gamble.

Hall & Evans, Eugene O. Daniels, Denver, for respondent Heaton.

DUBOFSKY, Justice.

We granted certiorari to review the judgment of the Colorado Court of Appeals in *Holmes v. Gamble,* 624 P.2d 905 (Colo.App. 1980), affirming a Denver District Court order directing verdicts for both defendants in a medical malpractice action. We affirm the judgment, but determine that the Court of Appeals applied the wrong standard in upholding the district court's ruling that the plaintiff failed to establish a *prima facie* case of *res ipsa loquitur.*

Holmes was a Vail building contractor who suffered severe injury to his knee

when a ditch in which he was working collapsed. Rescuers dug Holmes out of the ditch where he was buried waist-deep. A doctor in Vail referred Holmes to the defendant William E. Gamble, a Denver orthopedic surgeon, for immediate knee surgery. After a sedative was administered to Holmes, his brother transported him from Vail to Denver in the back of a station wagon. Dr. Gamble, assisted by the defendant anesthesiologist, Dr. Carl F. Heaton, operated on Holmes' knee the following day.[1] Holmes was anesthetized and unconscious during the entire operation.

Awakening from anesthesia the morning after the operation, Holmes experienced numbness and tingling in the last three fingers of both hands. Holmes testified that he noticed these sensations immediately after regaining consciousness. His mother and brother, who were present in his hospital room when he awakened, corroborated his testimony. Holmes also testified that he described the numbness and tingling to Dr. Gamble later that day and that Gamble told him that the sensations could have been caused by pressure on his elbows during the operation. Dr. Gamble testified that he was not sure whether Holmes told him of this condition the day after the operation but believed that Holmes first mentioned it almost two weeks later. A medical history taken by a neurologist whom Holmes consulted three weeks after the operation recited that Holmes had not become aware of the sensations until several days after the operation. The neurologist diagnosed the sensations as symptoms of bilateral ulnar neuropathy—a condition which can be caused by traumatic injury to nerves in the elbows. Holmes' use of his hands became increasingly impaired by a loss of strength and by curling of the fingers. Neurosurgery was performed on one elbow, and by the time of the trial, Holmes had recovered some but not full use of both hands.

Holmes sued Doctors Gamble and Heaton for malpractice, alleging that the ulnar neuropathy affecting his hands was triggered by traumatic injuries to the nerves in his elbows caused by the doctors' negligent failure to properly position him on the operating table during his knee operation. Because he possessed no direct evidence of the events which had transpired during the operation, Holmes attempted to invoke the doctrine of *res ipsa loquitur* to create a presumption that his neural disorder was a proximate result of the defendants' negligence. His *prima facie* case consisted of the following circumstantial evidence: never before had he exhibited any symptoms of ulnar neuropathy; the cave-in injured only his lower body; undue force was not exerted on his upper body or extremities during the rescue; medical examinations conducted preoperatively in Vail and at the Denver hospital disclosed no evidence of trauma to the elbow nerves; he was transported from Vail to Denver in a careful manner; he experienced no numbness or tingling in his fingers between the time he was injured in the cave-in and the time he was anesthetized by Dr. Heaton; and he experienced those sensations for the first time immediately upon regaining full consciousness following the operation. Holmes also presented medical testimony that: trauma to the elbow nerve often causes ulnar neuropathy; improper positioning on an operating table can cause trauma to a patient's elbow nerves; a doctor who improperly positions a patient on an operating table fails to use the reasonable degree of knowledge, skill and training possessed by other physicians practicing the same specialty; and, if a surgical patient has never experienced symptoms of ulnar neuropathy before being anesthetized, the onset of those symptoms immediately after the patient regains consciousness justifies an inference, to a reasonable degree of medical certainty, that the neuropathy was triggered between the time anesthesia was administered and the time the patient awoke.

The district court directed a verdict for the defendant Heaton at the close of the

---

1. The parties stipulated at trial that the knee surgery was a complete success; thus, this aspect of the surgical procedure is not at issue here.

plaintiff's evidence but did not rule on whether the plaintiff had established the elements of *res ipsa loquitur*. Defendant Gamble then presented evidence that: ulnar neuropathy can arise spontaneously, but bilateral ulnar neuropathy is virtually unheard-of in the medical world; Holmes' symptoms, involving sensations in three fingers, indicate an injury to the brachial plexus which cannot be caused by positioning during surgery[2]; the structure of Holmes' elbows exposed his ulnar nerves to an exaggerated risk of trauma; the trauma may have occurred during the cave-in but the sedative administered to Holmes could have precluded his pre-operative sensitivity to the nerve injury; Gamble properly positioned Holmes on the operating table; Holmes may not have experienced the first symptoms of neuropathy until several days after the operation; the failure of those symptoms to appear immediately after a patient awakens from anesthesia demonstrates the absence of a continuous heavy pressure on the ulnar nerve which would indicate a causal connection between operating room procedures and the patient's neuropathy; and that lesser trauma, such as the partial pressure of crutches, could later aggravate or cause the emergence of the symptoms of a pre-existing injury.

At the close of the evidence, the district court granted Dr. Gamble's motion for a directed verdict and ruled that the doctrine of *res ipsa loquitur* did not apply to the case. The Court of Appeals upheld the ruling and stated the controlling principle of law as follows:

> Whether the circumstantial evidence warrants the inference that it is more probable that defendants' negligence caused the injury, so that the doctrine of *res ipsa loquitur* is applicable in the first instance, is a question of law for the trial court. *Zimmer v. Celebrities, Inc.*, 44 Colo.App. 515, 615 P.2d 76 (1980). Here, the trial court concluded that plaintiff had failed to establish by a preponderance of the evidence that the injury was an event of the kind which ordinarily does not occur in the absence of negligence, and that other responsible causes, including the conduct of the plaintiff and third person [sic], were not sufficiently eliminated by the evidence.

624 P.2d at 907.

## I.

Holmes argues that both courts below misconceived the scope of the inquiry a trial court must make to resolve the preliminary question of whether a plaintiff has adduced sufficient circumstantial evidence of negligence for the doctrine of *res ipsa loquitur* to apply. The Court of Appeals' holding is erroneous, Holmes contends, in declaring that a plaintiff must establish the elements of *res ipsa loquitur* "by a preponderance of the evidence" to withstand a defense motion for a directed verdict.

Under the doctrine of *res ipsa loquitur,* a rebuttable presumption of a defendant's negligence arises if the plaintiff's circumstantial evidence shows that: (1) the event is the kind which ordinarily does not occur in the absence of negligence; (2) responsible causes other than the defendant's negligence are sufficiently eliminated by the evidence;[3] and (3) the negligence is within the scope of the defendant's duty to the plaintiff. *Montgomery Elevator Company v. Gordon*, Colo., 619 P.2d 66 (1980). For the case to be submitted to the jury on a theory of *res ipsa loquitur,* the circumstantial evidence of these three elements must be such that it is more likely that the event was caused by negligence than that it was not. Where the probabilities are at

---

2. The ulnar nerve innervates the little finger and half of the ring finger. Symptoms of numbness in the third finger indicate damage to the nerve which innervates it—the median nerve.

3. Evidence of a plaintiff's contributory negligence does not preclude submitting the case to the jury provided that, at the close of all the evidence, the trial court is able to determine that the defendant's negligence was, more probably than not, a cause of the injury. It is then within the province of the jury to decide what percentage of negligence is attributable to each party. *Montgomery Elevator Company v. Gordon,* Colo., 619 P.2d 66, 70 (1980).

best evenly balanced between negligence and its absence, it becomes the duty of the court to direct a verdict for the defendant. W. Prosser, *Law of Torts* § 39 (4th Ed. 1971); *see Montgomery Elevator, supra.*

The scope of the inquiry permitted by this standard of review is narrower than and inconsistent with the inquiry undertaken by the district court and approved by the Court of Appeals in this case. A verdict may not be directed against a plaintiff who relies on *res ipsa loquitur* to establish a *prima facie* case of presumed negligence because he fails to establish by a preponderance of the evidence that the injury was of the kind which ordinarily does not occur in the absence of negligence. The expression "preponderance of the evidence" connotes the evidence which is "most convincing and satisfying in the controversy between the parties," *Colo.J.I.2d* 3:1(4) and involves the determination of disputed factual questions, the credibility of witnesses, and the probative value of the evidence adduced by the parties. Instead, the proper inquiry by the trial court is directed to the legal sufficiency of the plaintiff's evidence. It involves no weighing of the evidence; rather, the evidence and all legitimate inferences therefrom are to be construed in a light most favorable to the plaintiff. *Gossard v. Watson,* 122 Colo. 271, 221 P.2d 353 (1950). *Adams v. Leidholdt,* 38 Colo.App. 463, 563 P.2d 15 (1977).

Therefore, we hold that the courts below erred in applying the preponderance of the evidence standard to an evaluation of the sufficiency of the plaintiff's *prima facie* case of *res ipsa loquitur.* To withstand a defense motion for a directed verdict on a cause of action premised on *res ipsa loquitur,* a plaintiff must adduce evidence, which, when viewed in a light most favorable to the plaintiff, establishes that the existence of each element of that doctrine is more probable than not.

## II.

Applying the correct standard to the facts of this case, we conclude that the district court and the Court of Appeals correctly ruled that the plaintiff had not established a *prima facie* case of *res ipsa loquitur* against either defendant. Taking all of the evidence and inferences therefrom in the light most favorable to Holmes, we find that it is at least equally likely that a cause other than the defendants' negligence was the basis of Holmes' injury.[4] The evidence showed that numbness and tingling in the last three fingers are symptoms of injury to both the ulnar and median nerves, but that only the ulnar nerve is exposed to any risk of trauma due to positioning on the operating table. Injury to both nerves is likely to be the result of pressure in the area of the armpit, where those nerves adjoin in the brachial plexus. All of the evidence of pressure to the armpits was linked to causes other than actions of the defendants—*i.e.,* lifting Holmes from the ditch, supporting him while walking, loading him into his brother's station wagon, and his use of crutches after the operation.

Finally, even if damage to the ulnar nerve alone could cause symptoms of numbness and tingling in three fingers—a result which the evidence showed to be extremely unlikely—Holmes has similarly failed to show that it is more probable that the damage to the nerves was caused by positioning on the operating table than by the cave-in or by pressure on his elbows during the ride from Vail to Denver. The evidence produced at trial demonstrated that Holmes' arms were placed in different positions throughout the operation, so that it was unlikely for the nerves in both elbows to have been damaged by pressure during the operation.

The judgment of the Court of Appeals is affirmed.

---

**4.** Because we find that Holmes has failed to satisfy this element of the *prima facie* case of *res ipsa loquitur,* we do not consider the suffi-
ciency of evidence to prove the remaining elements.