Daniel GAMBRELL, a minor, By and Through his mother and next friend, Linda Gambrell EDDY; and Linda Gambrell Eddy, personally, Plaintiffs–Appellants,

v.

Sheldon J. RAVIN, D.O.; and David R. McKee, D.O., Defendants–Appellees.

No. 85CA1291.

Colorado Court of Appeals, Div. III.

May 5, 1988.

Rehearing Denied June 2, 1988.

Certiorari Granted (Ravin) Nov. 7, 1988.

James S. Bertagnolli, Colorado Springs, guardian ad litem.

Peter A. Goldstein, P.C., and Peter A. Goldstein, Colorado Springs, for plaintiffs-appellants.

Johnson, Mahoney & Scott, P.C., Collie E. Norman, and Karen B. Best, Denver, for defendant-appellee Ravin.

Pryor, Carney and Johnson, P.C., and Friedrick C. Haines, Englewood, for defendant-appellee McKee.

STERNBERG, Judge.

This is an appeal by the plaintiffs, Daniel Gambrell and his mother, Linda Gambrell Eddy, from an adverse jury verdict and judgment entered thereon in their medical malpractice action against two physicians, Sheldon J. Ravin and David R. McKee. We reverse and remand for a new trial.

Defendant McKee provided prenatal care and treatment to plaintiff Linda Gambrell Eddy during the pregnancy that culminated in the birth of plaintiff Daniel Gambrell. However, when she went into labor, he was

not available, and defendant Ravin, who was taking his calls, delivered the child. Complications during delivery resulted in an injury to Daniel that caused a substantial limitation of the use of his left arm.

The case was tried to a jury over a period of nine days, and, after nearly two days of deliberation, the jury returned a verdict in favor of the defendants. An affidavit of one juror, Mrs. Rasher, indicated that toward the end of the jury deliberations she was feeling ill and that she was alone in her position favoring the plaintiffs. She asked the bailiff what would happen if the jury remained deadlocked and was told by him that the judge might make them deliberate for "up to two weeks." An affidavit of the jury foreman confirmed this remark. (The defendants submitted a second affidavit of Mrs. Rasher in which, *inter alia,* she indicated her belief that the defendants had not been negligent.)

### I.

Alleging that the bailiff's response to the juror was both unauthorized and untrue, and that it was prejudicial, the plaintiffs contend that the trial court erred in not granting them a new trial. We agree.

■ Matters relating to inquiries into the validity of a verdict are governed by CRE 606(b). By that rule, a juror is precluded from testifying as to matters occurring during the course of deliberation, or to the effect of events in the jury room upon his or other jurors' mind or emotion. *See Rome v. Gaffrey,* 654 P.2d 333 (Colo.App. 1982). However, the rule allows "a juror [to] testify on the question whether extraneous prejudicial information was improperly brought to the juror's attention, or whether any outside influence was improperly brought to bear upon any juror."

■ Under the rule, the portion of the juror's affidavit about her physical condition and her position as holding out alone against the other jurors, as well as her second affidavit, cannot properly be considered. *People v. Harrison,* 746 P.2d 66 (Colo.App.1987). It is appropriate to consider the remark attributed to the bailiff,

that if a verdict could not be reached, the judge might make them deliberate for "up to two weeks." Nevertheless, exposure to this extraneous influence does not, in and of itself, mandate a new trial. It must be determined if the influence was prejudicial. How to determine prejudice presents difficult logical and philosophical problems.

The portion of the rule prohibiting inquiry into the "effect of anything upon [a juror's] mind or emotions as influencing him to assent to ... the verdict ... or concerning his mental processes in connection therewith" prevents inquiry that could determine whether the bailiff's statement did affect the juror and, thus, was prejudicial. In *Wiser v. People,* 732 P.2d 1139 (Colo.1987), that anomaly is discussed at length. There, the court determined that "the relevant question is whether there is a 'reasonable possibility' that extraneous contact or influence affected the verdict to the detriment of the defendant." While the *Wiser* court was dealing with a verdict in a criminal case, it was interpreting CRE 606(b), as are we, and therefore, we find no reason not to apply the same rule in this civil case.

Thus, we apply the objective test of *Wiser, i.e.,* whether there is a *reasonable possibility* that the bailiff's comment that the judge might make the jury deliberate for up to two weeks affected the verdict to the detriment of the party attacking the verdict. We conclude that there was a reasonable possibility that the jury was affected and hold, therefore, that a new trial is required.

Had the trial court itself made a statement to the jurors similar to the remarks of the bailiff we could not sanction such a "dynamite *Allen*-type" charge. *See Lowe v. People,* 175 Colo. 491, 488 P.2d 559 (1971). No more should we allow a verdict to stand based on a bailiff's comment to the same effect. The bailiff is, in the eyes of the jury, its contact with the court.

### II.

We address other assertions of error raised by the plaintiffs which are likely to reoccur on retrial.

## A.

The first of these is plaintiffs' contention that the court erred in refusing to instruct on the doctrine of *res ipsa loquitur*. We agree with this contention, but only as to Dr. Ravin, as Dr. McKee was not present at the delivery of the baby.

No longer is the application of the doctrine of *res ipsa loquitur* limited to situations in which no reasonable explanation for injury exists other than the negligence of the defendant. *See Holmes v. Gamble*, 655 P.2d 405 (Colo.1982) and *Hartford Fire Insurance Co. v. Public Service Co.*, 676 P.2d 25 (Colo.App.1983).

In *Montgomery Elevator Co. v. Gordon*, 619 P.2d 66 (Colo.1980), the essential elements of the doctrine were enumerated as follows:

"(1) 'The event is the kind which ordinarily does not occur in the absence of negligence.

"(2) 'Other reasonable causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence, [and]

"(3) 'The indicated negligence is within the scope of the defendant's duty to the plaintiff.' "

■ However, a plaintiff does not have to establish "by a preponderance of the evidence that the injury was of the kind which ordinarily does not occur in the absence of negligence." *Holmes v. Gamble, supra.* As we understand that case, it is not a matter for the trial court to determine whether the evidence preponderates or not; rather, it should consider all legitimate inferences from the evidence in the light most favorable to the plaintiffs, and then submit the issue of *res ipsa loquitur* to the jury if the facts in evidence reasonably permit a conclusion that negligence is the more probable explanation. *Montgomery Elevator Co. v. Gordon, supra.* Restatement (Second) of Torts § 328D, comment e (1965). It is the function of the jury to determine which of several potential explanations was more convincing in determining the cause of the injury. *Hartford Fire Insurance Co. v. Public Service Co., supra.*

■ On retrial, if the evidence so establishes, the plaintiffs would be entitled to an instruction on *res ipsa loquitur*, and if such instruction is given, the instruction on the happening of an accident not being presumptive of negligence, *CJI–Civ. 2d* 9:12 (1980) should not be given. *Kitto v. Gilbert*, 39 Colo.App. 374, 570 P.2d 544 (1977).

## B.

■ Finally, we address the contention that the trial court erred in not instructing the jury on the standard of care applicable to specialists. If, as occurred at this trial, there is a question of fact presented by the evidence as to whether one or both of the defendants held himself out as a specialist, the court should instruct the jury both on the standard of care required of specialists, *CJI–Civ. 2d* 15:5 (1980), and of the standard of care required of general practitioners, *CJI–Civ. 2d* 15:1 (1980). In addition to these instructions, the jurors should be instructed that it is their duty to determine the fact question whether, under the evidence, either defendant held himself out to be a specialist and, on the basis of this determination, to apply the appropriate standard of care instruction. *See Short v. Kinkade*, 685 P.2d 210 (Colo.App.1983).

Here, the evidence that Dr. Ravin had advertised in the Yellow Pages under the heading of "Family Practice Obstetrics & Pediatrics," was enough to raise this issue. His explanation that the meaning of the advertisement was that he was holding himself out in the community "as a family practitioner who did deliver babies and did take care of babies" presents a fact question for resolution by the jury.

The other contentions of error are without merit or are unlikely to arise on retrial.

The judgment is reversed and the cause is remanded for a new trial.

JONES, J., concurs.

VAN CISE, J., concurs in part and dissents in part.

VAN CISE, Judge, concurring in part and dissenting in part:

The majority opinion in *Wiser v. People*, 732 P.2d 1139 (Colo.1987) required the "reasonable possibility" test to be used in determining whether extraneous juror conduct affected the verdict to the detriment of the moving party. I agree with the justices who specially concurred in the result in *Wiser* that the "minimal showing [of reasonable possibility] is not sufficient to impeach a jury's verdict and to warrant a new trial," and that "a new trial should not be granted unless the movant proves that actual prejudice from juror misconduct or extraneous juror conduct is more probable than not." If that were the test, I would hold that the moving party had failed to prove that a different verdict would have resulted absent the bailiff's remark to the juror.

However, the test adopted by the majority in *Wiser* must be applied by us. I agree that here, as stated by the majority in the instant case, "there was a reasonable possibility that the jury was affected." Therefore, I concur in the majority's conclusion that the judgment must be reversed and a new trial granted on this ground.

The majority then proceeds to "address other assertions of error raised by the plaintiffs which are likely to reoccur on retrial." I do not agree with the majority's conclusion in the first of these (II A) "that the court erred in refusing to instruct on the doctrine of *res ipsa loquitur*."

The requisites for application of that doctrine are set forth in *Montgomery Elevator Co. v. Gordon*, 619 P.2d 66 (Colo.1980), these being the three elements quoted in the majority opinion and reiterated in *Holmes v. Gamble*, 655 P.2d 405 (Colo. 1982). As stated in *Holmes:*

"For a case to be submitted to the jury on a theory of *res ipsa loquitur*, the circumstantial evidence of these three elements must be such that it is more likely that the event was caused by negligence than that it was not. Where the probabilities are at best evenly balanced between negligence and its absence, it becomes the duty of the court to direct a verdict for the defendant."

The plaintiffs' expert testified that shoulder dystocia, the delivery complication that led to the child's injury, might be encountered through the negligence of a physician, but that it might be encountered without a physician's negligence. Also, the expert testified that such injury can occur despite appropriate care, and that, once shoulder dystocia does occur, "there was an unavoidable risk of brachial plexus injury...."

Based on the expert testimony presented by the plaintiffs, in addition to that supplied by defendants, I agree with the trial court that plaintiffs did not establish a prima facie case that this injury ordinarily would not occur in the absence of negligence. Unless the rule is to be that in all negligence cases a *res ipsa loquitur* instruction must be given if requested, and that is the conclusion to be drawn from the majority opinion, the trial court's refusal to instruct the jury on *res ipsa loquitur* was proper on this record.

Of course, on retrial, if the evidence is sufficient to meet the prescribed tests, plaintiffs would be entitled to an instruction on *res ipsa loquitur*, although it would be applicable to defendant Ravin only. However, if such instruction is given, the defendant would be entitled to an instruction patterned on *CJI–Civ. 2d* 9:12 (1980) to the effect that the happening of an accident or a bad result does not raise any presumption of negligence on the part of either the plaintiff or the defendant. *Conrad v. Imatani*, 724 P.2d 89 (Colo.App. 1986).

Also, I do not agree with part II B of the majority opinion. In my view, the evidence presented was insufficient to raise a fact question as to whether Dr. Ravin held himself out as a specialist rather than a general practitioner. On this record, an instruction on standard of care patterned on *CJI–Civ. 2d* 15:1 (1980) was sufficient.