**Sheldon J. RAVIN, D.O., and David R. McKee, D.O., Petitioners,**

v.

**Daniel GAMBRELL, a minor, By and Through his mother and best friend, Linda Gambrell EDDY, and Linda Gambrell Eddy, personally, Respondents.**

No. 88SC309.

Supreme Court of Colorado, En Banc.

March 19, 1990.

Johnson & Mahoney, P.C., Collie E. Norman, Denver, for petitioner Sheldon J. Ravin, D.O.

Pryor, Carney and Johnson, P.C., Kathie Fliss Martell, Englewood, for petitioner David R. McKee, D.O.

Peter A. Goldstein, P.C., Peter A. Goldstein, Colorado Springs, for respondents.

James S. Bertagnolli, Colorado Springs, guardian ad litem for Daniel Gambrell, a Minor.

Sherman and Howard, W. David Pantle and Steven D. Plissey, Denver, for amicus curiae Bank Western Federal Sav. Bank.

Justice KIRSHBAUM, delivered the Opinion of the Court.

In *Gambrell v. Ravin*, 764 P.2d 362 (Colo.App.1988), the Court of Appeals held that the trial court erroneously denied a motion for new trial filed by Daniel Gambrell and his mother, Linda Gambrell Eddy (respondents). The Court of Appeals held that respondents were entitled to a new trial because improper communications occurred between the jury and a bailiff during jury deliberations and because the trial court erred in refusing to instruct the jury on the issue of res ipsa loquitur. Having granted petitions for writ of certiorari filed by petitioners Sheldon J. Ravin and David R. McKee to review these issues, we now affirm and remand the case with instructions.

## I

When Linda Gambrell Eddy (Eddy) became pregnant in the fall of 1978, she decided to use the LaBoyer method[1] of natural childbirth. She engaged the services of David R. McKee, a licensed doctor of osteopathic medicine, and McKee made arrangements for delivery in the birthing

---

1. In the LaBoyer method of natural childbirth the child is placed in a bath of warm water immediately following birth to lessen the traumatic impact of the birthing process.

room [2] of Eisenhower Hospital in Colorado Springs.

In July 1979, McKee participated in National Guard maneuvers. He referred Eddy and his other patients to Sheldon J. Ravin, also a licensed doctor of osteopathic medicine.

On the morning of July 13, 1979, Eddy telephoned Ravin and reported that she was experiencing pain. Ravin advised her to go to the hospital when her contractions became closer. She did so, and arrived at the hospital at approximately 7:00 p.m. A hospital staff member informed Ravin by telephone that Eddy was in labor and transported her to the birthing area. Ravin arrived at the hospital at 7:50 p.m., at which time Eddy was in heavy labor. She reminded Ravin that she wished to experience a natural childbirth. She also stated that she did not want to receive any anesthesia and that she did not want an episiotomy to be performed.[3]

Approximately 8:00 p.m., Ravin informed Eddy that because the child was large an episiotomy should be performed. Eddy refused to authorize the procedure. The child's head was then delivered, but shoulder dystocia—the lodging of the shoulders in the birth canal—prevented further delivery and the child's head began to recede back into the birth canal. Recognizing that if delivery were not completed within eight to ten minutes the child might die, Ravin utilized a number of techniques in efforts to dislodge the shoulder. Other personnel associated with the hospital assisted in these procedures. Delivery was finally completed by means of the Woods maneuver, which technique requires application of pressure to the top of the uterus while the body of the child is turned. The child, Daniel, developed a condition involving paralysis of his left arm as the result of an injury sustained during the delivery.

Respondents subsequently filed a civil action against Ravin alleging negligent delivery. McKee was later joined as a co-defendant. Trial commenced in May 1985.[4] At the conclusion of the evidentiary phase of the trial, the trial court denied respondents' request to instruct the jury with respect to the doctrine of res ipsa loquitur and refused to direct a verdict for the petitioners. After two days of deliberation the jury returned a verdict in favor of the petitioners.

Respondents subsequently filed a motion for new trial. The respondents argued, *inter alia*, that the verdict should be set aside because of improper communications between a bailiff and the jury during jury deliberations and because the trial court erred in refusing to instruct the jury with respect to the doctrine of res ipsa loquitur. At the hearing on this motion respondents introduced affidavits establishing that on the second day of deliberations a juror informed the attending bailiff that she was not feeling well and was the only juror who favored the respondents; that the juror asked whether a unanimous verdict was required and how long deliberations would continue in the absence of unanimity; that the bailiff stated that the verdict had to be unanimous and the judge could require deliberations to continue for some two weeks; and that this conversation was heard by other jurors.

The trial court denied the motion for new trial. The trial court concluded that although the bailiff's statements were improper, a new trial was not required because the conversation did not directly concern the case itself. It also ruled that the request for a res ipsa loquitur instruction

---

2. The birthing room of Eisenhower Hospital contains furnishings similar to those in a private home and allows a patient to deliver in a bed rather than on a delivery table. Mrs. Eddy toured the room prior to delivery and was told of the risks that might develop during a delivery in a birthing room rather than in a delivery room.

3. An episiotomy is defined as a surgical incision of the vulva for obstetrical purposes, when laceration seems imminent during delivery. *See Stedman's Medical Dictionary* 477 (24th ed. 1982); *Dorland's Illustrated Medical Dictionary* 454 (16th ed. 1981).

4. Trial was originally scheduled to commence in 1983, but the trial date was continued when Daniel began to recover use of his left arm.

was not warranted by respondents' evidence.

In reversing the trial court's judgment, the Court of Appeals concluded that the bailiff's improper communication required the granting of a new trial. The Court of Appeals also directed that upon retrial the issue of res ipsa loquitur should be submitted to the jury if the evidence so warrants.[5]

## II

In addressing the issues generated by the conduct of the bailiff, the Court of Appeals held that to determine whether misconduct during jury deliberations warranted a new trial a trial court must apply the objective test of whether there is a reasonable possibility that the misconduct affected the jury verdict. In reaching this conclusion the Court of Appeals adopted the rationale of our decision in *Wiser v. People*, 732 P.2d 1139 (Colo.1987), a criminal proceeding. Petitioners assert that the *Wiser* test should not apply to civil actions and, alternatively, that the facts of this case do not satisfy that test. We reject the petitioners' arguments.

■ A person seeking to set aside a verdict on the ground of extraneous influence upon the jury must not only establish the fact of improper communication but also establish that as a result thereof the moving party was prejudiced. *People v. Garcia*, 752 P.2d 570 (Colo.1988); *Wiser v. People*, 732 P.2d 1139 (Colo.1987); *Canton Oil v. District Court*, 731 P.2d 687 (Colo. 1987); *Butters v. Dee Wann*, 147 Colo. 352, 363 P.2d 494 (1961). The requirement of prejudice recognizes the policy of encouraging finality of judgments and reflects concern with the cost and delay associated with retrials.

■ In *Wiser v. People*, we pointed out that any test of prejudice must begin with recognition of the limitations placed upon the introduction of evidence of juror misconduct by CRE 606(b). That rule provides as follows:

**(b) Inquiry into validity of verdict or indictment.** Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question of whether extraneous prejudicial information was improperly brought to the jurors' attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

CRE 606(b). As the Court of Appeals recognized, CRE 606(b) prohibits inquiry into the deliberative processes of jurors. *People v. Garcia*, 752 P.2d 570 (Colo.1988); *People v. Collins*, 730 P.2d 293 (Colo.1986); *Santilli v. Pueblo*, 184 Colo. 432, 521 P.2d 170 (1974). However, a party alleging jury misconduct may introduce evidence to establish that external influences improperly influenced a jury decision. *People v. Garcia*, 752 P.2d 570 (Colo.1988); *Wiser v. People*, 732 P.2d 1139 (Colo.1987); *People v. Harrison*, 746 P.2d 66 (Colo.App.1987). In this case, the trial court and the Court of Appeals properly excluded from consideration those portions of juror affidavits which discussed the deliberative processes of the jurors.

■ Colorado Rule of Evidence 606(b) applies to all cases, civil as well as criminal. The rule is designed to reinforce the finality of jury verdicts, to protect the sanctity of jury deliberations, and to safeguard the privacy of jurors. *See McDonald v. Pless*, 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 606[3] (4th ed. 1988).

---

5. The Court of Appeals also held that the trial court erroneously failed to instruct the jury with regard to the applicable standard of care of specialists. This ruling has not been appealed to this court.

This and other courts have recognized that jurors should be protected from harassment by a losing party. *Boyles v. People,* 90 Colo. 32, 6 P.2d 7 (1931). *See McDonald v. Pless,* 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300 (1915); *United States v. Schwartz,* 787 F.2d 257, 261–62 (7th Cir. 1986). *See also* C. McCormick, *Handbook on the Law of Evidence* § 68 (3d ed. 1984); 3 J. Weinstein & M. Berger, *Weinstein's Evidence* § 606[3] at 606–25 (4th ed. 1988); Crump, *Jury Misconduct,* 66 N.C.L.Rev. 509 (1988). However important these concepts are, in cases where the result of jury deliberations has been substantially undermined because of fundamental flaws in the deliberative process itself, courts must weigh the force of these policies against the overriding concern that parties to the judicial process be assured of a fair result. *See Patterson v. Colorado,* 205 U.S. 454, 459, 27 S.Ct. 556, 557, 51 L.Ed. 879 (1907). All of these concerns are equally important in both civil and criminal proceedings.

■ In recognition of these conflicting policy concerns, this court in *Wiser v. People* rejected an actual prejudice standard by which to gauge extraneous influences on jury deliberations in the context of a motion for new trial and adopted a reasonable possibility of prejudice test. *Id.* at 1142. Petitioners argue that this court has adopted a quite different standard for such motions in the context of civil proceedings, relying primarily on our decision in *Butters v. Dee Wann,* 147 Colo. 352, 363 P.2d 494 (1961). In *Butters,* a juror conducted an independent investigation during the course of a trial with regard to the drinking habits of the deceased and license revocation proceedings against the deceased, in direct contravention of a trial court's evidentiary ruling in open court that the jury was not to consider evidence of such matters. In reversing the trial court's denial of the plaintiffs' motion for new trial, we stated, quoting from *Panko v. Flintkote Co.,* 7 N.J. 55, 80 A.2d 302 (1951), that " '[t]he test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so.' " *Butters v. Dee Wann,* 147 Colo. 352, 357, 363 P.2d 494, 497.

This portion of the *Butters* decision emphasized the objective nature of the test: not whether the impropriety actually influenced a particular juror, but whether it had the capacity to do so. In *Canton Oil v. District Court,* 731 P.2d 687, 696 (Colo. 1987), we affirmed the *Butters* formulation in concluding that a juror's decision to send religious materials to a child of a participating attorney and to make inquiries into the religious background of attorneys participating in the trial constituted jury misconduct that had the capacity to influence the verdict. The test for setting aside jury verdicts in civil cases described in *Butters* and *Canton* does not differ in any substantial respect from the test we articulated in *Wiser.* Because the policies of CRE 606 apply to all judicial proceedings, we see no reason to establish separate standards for civil and criminal cases.

■ The Court of Appeals concluded that in this case the bailiff's comments did have a reasonable possibility of affecting the jury verdict. We agree. One juror communicated that she was experiencing personal discomfort and that she was the only juror convinced that the plaintiffs had established liability. When the juror asked what result to expect if the jury could not reach a unanimous verdict, the bailiff responded that the jury could be confined for a period of two weeks. The bailiff's comments were overheard by other jurors. The trial court concluded that the bailiff's conduct was improper. These circumstances clearly establish a reasonable possibility that the bailiff's improper comments influenced the jury's ultimate verdict, as the Court of Appeals concluded. We therefore affirm that portion of the Court of Appeals opinion.

### III

The Court of Appeals stated in dicta that the trial court erred in failing to instruct the jury on the doctrine of res ipsa loquitur. *Gambrell v. Ravin,* 764 P.2d 362, 365. Petitioners argue that the evidence adduced by respondents did not warrant the giving of such an instruction. Because the

evidence adduced at the new trial may well differ from that presented to the trial court here, we do not address that argument directly.

 Our prior decisions have made clear that when a plaintiff introduces sufficient evidence to establish the presumption of negligence embodied in the doctrine of res ipsa loquitur, the trial court must instruct the jury as to the nature and effect of that doctrine. *Bettner v. Boring,* 764 P.2d 829 (Colo.1988); *Holmes v. Gamble,* 655 P.2d 405 (Colo.1982); *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66 (Colo. 1980); *Hartford Fire Ins. Co. v. Public Serv. Co.,* 676 P.2d 25 (Colo.App.1983). In *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66, we recognized that to establish a prima facie case of res ipsa loquitur a plaintiff must present evidence that (1) the event is the kind which ordinarily does not occur in the absence of negligence; (2) responsible causes other than the defendant's negligence are sufficiently eliminated by the evidence; and (3) the presumed negligence is within the scope of the defendant's duty to the plaintiff. In *Holmes v. Gamble,* 655 P.2d 405 (Colo.1982), we emphasized that the plaintiff must produce evidence "which, when viewed in a light most favorable to the plaintiff, establishes that the existence of each element of that doctrine is more probable than not" to establish a prima facie case of res ipsa loquitur. *Id.* at 409. Thus, a plaintiff need not eliminate every possible cause other than the defendant's negligence to establish a prima facie case for the applicability of the res ipsa loquitur doctrine. *See, e.g., Bettner v. Boring,* 764 P.2d 829; *Holmes v. Gamble,* 655 P.2d 405.

We have concluded that the respondents are entitled to a new trial because of the improper conduct of the bailiff. We presume, as did the Court of Appeals, that on retrial any issue concerning the appropriateness of a res ipsa loquitur instruction will be determined in view of the evidence then before the trial court and in light of the legal test established by our prior decisions.

## IV

The judgment of the Court of Appeals is affirmed, and the case is remanded to the Court of Appeals with directions to remand to the trial court for new trial.

ERICKSON, J., concurs in part and dissents in part and VOLLACK, J., joins in the concurrence and dissent.

Justice ERICKSON concurring in part and dissenting in part:

Linda Gambrell Eddy, individually and as mother of Daniel Gambrell (plaintiff-respondents), brought a malpractice action against Sheldon J. Ravin, D.O. and David R. McKee, D.O. (defendant-petitioners) for injuries suffered by Daniel Gambrell at the time of his birth. The plaintiffs alleged that Dr. McKee was negligent in providing Linda Gambrell Eddy with prenatal care. Dr. Ravin was charged with negligence in the delivery of Daniel Gambrell that caused shoulder dystocia. A jury trial ended with a verdict in favor of Dr. Ravin and Dr. McKee. The court of appeals reversed because of juror misconduct and ordered a new trial. *Gambrell v. Ravin,* 764 P.2d 362 (Colo.App.1988). On certiorari review the majority has ordered that the plaintiffs be granted a new trial. I agree, but only because the court failed to instruct the jury on *res ipsa loquitur.* I would affirm the court of appeals conclusion that the failure to instruct the jury on *res ipsa loquitur,* under the facts of this case, requires a new trial. *Id.*

In *Wiser v. People,* 732 P.2d 1139 (Colo. 1987), a majority of the court upheld the defendant's conviction and, in reviewing the evidence of juror misconduct, held that the relevant question is whether there is a "reasonable possibility" that extraneous contact or influence affected the verdict to the detriment of the defendant. *Id.* at 1142. A number of decisions from other jurisdictions have addressed juror misconduct in criminal cases and provide some support for the creation of the new test in criminal cases. Two members of the court specially concurred in the affirmance of Wiser's conviction and stated that a defen-

dant who makes a motion for a new trial bears the burden of proving actual prejudice when asserting juror misconduct and that Wiser had not shown actual prejudice. *See People v. Mackey*, 185 Colo. 24, 521 P.2d 910 (1974). The special concurrence in *Wiser* emphasized that a new trial should not be granted unless the defendant establishes that actual prejudice from juror misconduct or extraneous juror conduct is more probable than not. *Wiser*, 732 P.2d at 1144 (Erickson, J., specially concurring). No support can be found in any case that we have previously decided for applying the principles of *Wiser* to a civil proceeding. All of the cases relied on by the majority in *Wiser* were criminal cases.

Prior to the announcement of this case, the standard for measuring juror misconduct in a civil case was well established in Colorado. The issue under *Butters v. Dee Wann*, 147 Colo. 352, 363 P.2d 494 (1961), is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so. *Accord Canton Oil Corp. v. District Court*, 731 P.2d 687 (Colo.1987).

I do not agree with the majority's conclusion that the *Butters* and *Canton* formulation of the test for setting aside a jury verdict in a civil cases does not differ in any substantial respect from the test articulated for criminal cases in *People v. Wiser*.

The criminal standard in *Wiser*, which the majority now extends to jury misconduct in civil trials, ignores the differences between the constitutional guarantees afforded a criminal defendant and litigants in a civil setting. The contumacious conduct of the jurors in *Butters v. Dee Wann* and *Canton Oil Corp. v. District Court* was far greater than that complained of in *Wiser v. People*. By adopting the "reasonable possibility standard," we are deprecating the finality of a jury verdict in a civil case. In *Wiser*, the district judge held that a juror's use of a dictionary to understand the court's instructions and another juror's inquiry about the source of the court's instructions were insufficient to establish that the defendant was prejudiced by juror misconduct. The "reasonable possibility standard" adopted in *Wiser* did not require a new trial under the facts in that case, but the standard has expanded the constitutional protection of a defendant in a criminal case to a fair and impartial jury. I do not believe that jury trials in civil cases should be subject to the same standard. The *Butters v. Dee Wann* standard would not, in my opinion, require a new trial in this case.

Accordingly, I dissent to the adoption of the "reasonable possibility standard" to gauge juror misconduct, but concur that a new trial is required because of the failure to instruct on *res ipsa loquitur*.

I am authorized to say that Justice VOLLACK joins in the concurrence and dissent.