22CA1439 Peo v Owens 03-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 22CA1439
Arapahoe County District Court No. 21CR175
Honorable Ben L. Leutwyler III, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Lewis Javon Owens,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE FREYRE
Schock and Sullivan, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

---

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney
General, Benjamin C. Elrod, Assistant Attorney General, Denver, Colorado, for
Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, John Plimpton, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Lewis Javon Owens, appeals the judgment of conviction entered on jury verdicts finding him guilty of robbery, third degree assault, harassment, and extortion.  We affirm.

## I.     Background

¶ 2     On the evening of September 16, 2020, the female victim was waiting at a bus stop after work when a man approached her and asked if she wanted to come back to his apartment.  She refused and said she had a boyfriend, at which point the man became angry with her.  The victim tried to ignore the man and walk away, but he grabbed her and forcibly sat her back down on the bus bench before taking her backpack and "put[ting] it on himself."  The man then told her that he would return the backpack if she went with him to his apartment, but once again she refused.  The man then "laid [her] down on the bench" and "got on top of [her]."  As she tried to escape, he punched her in the face.  During the struggle, the victim retrieved a bottle of pepper spray from her pocket and sprayed the man in the face.  The man then let go and the victim fled to her boyfriend's apartment.  As she was running away, the man said that he would "find her."

¶ 3     The victim waited two months before reporting the incident to the police. She told the police she delayed reporting because she was afraid of getting in trouble for spraying the man who had assaulted her.

¶ 4     Shortly after the incident, the victim learned from her coworkers that a nearby store, Pacific Ocean Market, had posted a picture of Owens in the window. Owens' photo was in the store's window because he had shoplifted and trespassed on numerous occasions. Pacific Ocean Market is located directly across the street from the bus stop where the attack occurred.

¶ 5     Before reporting the incident to the authorities, she asked a Pacific Ocean Market employee whether there was any surveillance footage of the incident and learned there was not. However, the manager of the store provided the victim with Owens' photograph because Owens fit the description of her assailant. The victim provided the photograph, along with photographs of her injuries, to the police and said this was her assailant. She recognized him as a customer from her workplace. Later, the victim identified Owens in a photographic line-up procedure with eighty percent confidence that he was her assailant.

¶ 6     Owens asserted an alibi defense, and his sister testified that he was with her playing video games at their shared apartment the entire night of the charged incident.  The jury rejected his defense and convicted him as charged.

¶ 7     Owens challenges his convictions on two grounds and contends the trial court erroneously (1) denied his motion for a new trial after the jury was exposed to extraneous information and (2) denied his mistrial motion after a witness stated Owens had previously "robbed" Pacific Ocean Market.  We discern no error and affirm the judgment.

## II.     Jury Exposure to Extraneous Information

¶ 8     Owens contends that the trial court reversibly erred when it denied his motion for a new trial based on extraneous prejudicial information that was brought to the jurors' attention by an unknown juror.  Because we conclude the unknown juror's statement did not constitute extraneous information, we discern no basis for reversal.

### A.     Additional Facts

¶ 9     Owens filed a motion for a new trial and claimed the jury was exposed to extraneous prejudicial information that affected his right

to a fair trial. Specifically, he alleged that two jurors believed that he was not guilty of some of the charges and only acquiesced in convicting him of all charges after an unknown juror said, "[I]f the jury did not come to a unanimous guilty decision as to every count, all counts must be mistried, and the entire trial would have been a waste of time." Owens submitted two juror affidavits to support his claim.

¶ 10 Before deliberations began, the court instructed the jury as follows:

> In this case a separate offense is charged against Mr. Owens in each count of the information. Each count charges a separate and distinct offense and the evidence and the law applicable to each count should be considered separately, uninfluenced by your decision as to any other count. The fact that you may find Mr. Owens guilty or not guilty of one of the offenses charged, should not control your verdict as to any other offense charged against Mr. Owens. Mr. Owens may be found guilty or not guilty of any one of [sic] all of the offenses charged.

¶ 11 Additionally, after the verdicts were read, the court polled the jury, and each juror individually confirmed that the verdicts were theirs.

4

¶ 12    Relying on *People v. Newman*, 2020 COA 108, ¶ 10, the trial court found that the unknown juror's statement did not constitute extraneous information, was inadmissible under CRE 606(b), and thus could not be considered. The court denied the motion in a thorough written order.

### B.    Standard of Review and Applicable Law

¶ 13    A trial court's decision to grant or deny a new trial is a matter entrusted to the court's discretion and will not be disturbed on review, absent an abuse of that discretion. *People v. Wadle*, 97 P.3d 932, 936 (Colo. 2004). A court abuses its discretion when its ruling is "manifestly arbitrary, unreasonable, or unfair, or when it misapplies the law." *People v. Johnson*, 2021 CO 35, ¶ 16 (citations omitted). However, when a motion for a new trial concerns a juror's exposure to extraneous information, it presents a mixed question of law and fact. *People v. Clark*, 2015 COA 44, ¶ 216. We review the court's legal conclusions de novo, but we defer to its factual findings if they are supported by competent evidence in the record. *Newman*, ¶ 10. Whether the statement made by the juror constitutes "extraneous prejudicial information" under CRE 606(b)

is a legal question that we review de novo. *See People v. Harlan*, 109 P.3d 616, 624 (Colo. 2005).

¶ 14     A defendant is constitutionally entitled to a fair and impartial jury. *People v. Abu-Nantambu-El*, 2019 CO 106, ¶ 14. To ensure this right, jurors are not allowed to consider "any information that is not properly received into evidence or included in the court's instructions." *Harlan*, 109 P.3d at 624; *see also Wadle*, 97 P.3d at 935 ("It is well-settled that the exposure of a jury to information or influences outside of the trial process itself, whether or not that exposure occurred as the result of deliberate juror misconduct, may require reversal of a criminal conviction.").

¶ 15     To promote the finality of verdicts, shield verdicts from impeachment, and protect jurors from harassment and coercion, Colorado law strongly disfavors any juror testimony impeaching a verdict. *Clark v. People*, 2024 CO 55, ¶ 65[1]. CRE 606(b) codifies

---

[1] At the time the opening brief was filed, *Clark* was pending review before the Colorado Supreme Court. After the opening brief was filed, *Clark* was affirmed by the supreme court. *See Clark v. People*, 2024 CO 55.

this general prohibition on inquiries into the validity of a verdict, stating that

> a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that juror's or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith.

¶ 16 However, the rule creates narrow exceptions, including by permitting inquiry into whether extraneous prejudicial information was improperly brought to a jury's attention. CRE 606(b); *Clark*, 2024 CO 55, ¶ 67. To meet this narrow exception, the moving party must satisfy a two-pronged test. *Clark*, 2024 CO 55, ¶ 69. First, the movant must establish that the information falls under the definition of prejudicial extraneous information. *Id.* at ¶ 70. To do so, the movant must show that the extraneous information consists of (1) legal content and specific factual information, (2) learned outside the record that is (3) relevant to the issues in the case at hand. *Newman*, ¶ 15. "Legal content" means "a statement of law." *Id.* ¶¶ 23, 30. Moreover, "information learned from outside the record" could include (1) a juror's independent investigation into the

law or (2) the introduction of a statement of law from the juror's personal knowledge if that statement was inconsistent with or supplemental to the instructions provided by the district court. *Id.* at ¶¶ 32, 33, 35. Finally, where a statement of law relates to the definition or elements of the crime or any other issue before the jury, it is relevant to the issues in a case. *Id.* at ¶ 40.

¶ 17 If the movant cannot satisfy the first prong, the evidence is inadmissible, and the claim is rejected without further inquiry. *Id.* at ¶ 74. The second prong of the test requires the movant to establish that the extraneous information posed a reasonable possibility of causing prejudice to the defendant. *Id.*

## C. Analysis

¶ 18 We conclude, consistent with the trial court, that Owens failed to establish that the unknown juror's statement constituted extraneous prejudicial information and find *Newman* dispositive on this issue. The *Newman* division considered the boundaries of what a juror who is a lawyer can do and say during deliberations, and in doing so, it considered the meaning of "legal content," as that term is used in defining what constitutes "extraneous prejudicial information." *Id.* at ¶ 1. It held that "legal content" means a

8

statement of law.  *Id.* at ¶ 23.  It reasoned that a statement of law is not a lawyer-juror's "general legal knowledge" because all jurors rely on their personal experience and knowledge in deliberations.  *Id.* at ¶ 26.  Moreover, construing legal content to encompass a lawyer-juror's professional background would effectively prohibit lawyers from jury service, contrary to the legislature's intent.  *Id.* at ¶ 27; *see* Ch. 159, sec. 6, § 16-10-103, 1998 Colo. Sess. Laws 466.

¶ 19     The division further held, as relevant here, that a statement is "extraneous" or outside the record when it is "inconsistent with or supplemental to the instructions provided by the trial court." *Newman,* ¶ 35.  Finally, the division considered whether the challenged statement is relevant to the issues in the case and thus requires a court to conduct an evidentiary hearing.  *Id.* at ¶ 36.  It held that statements related to definitions or elements of a crime, as well as "any other issue before the jury," are relevant to the issues in a case.  *Id.* at ¶ 40.

¶ 20     The division then applied its holding to numerous statements made by the lawyer-juror during deliberations.  As relevant here, one of those statements concerned what would happen if the jury did not reach a unanimous verdict.  *Id.* at ¶ 62.  The lawyer-juror

informed the jury that it would result in a hung jury and a mistrial, that the complaining witness would not likely return for another trial due to the trauma, and that the jury would be "letting a rapist back out into the community." *Id.* The division held that to the extent the juror's statement could be considered a statement of law, it was not relevant to the elements of any charge or to any other issue before the jury. *Id.* at ¶ 63. It therefore concluded that the statement was inadmissible under CRE 606(b). *Id.*

¶ 21 More recently, the Colorado Supreme Court relied on *Newman*'s analysis and holding to decide whether a juror's statement during deliberations concerning an instruction she received in a prior case constituted extraneous prejudicial information. *Clark*, 2024 CO 55, ¶ 17. The juror informed the jury that a judge in another case told the jury it had to deliberate until it reached a unanimous verdict. *Id.* at ¶ 85. The court first concluded that a juror's retelling of prior jury service, including her recollection of the instructions, was not "legal content." *Id.* at ¶ 86. It next concluded that the statement was not based on independent investigation, but on a prior experience and, thus, was not extraneous. *Id.* Finally, the court held that even if the statement

was extraneous legal content, it did not concern any definition or elements of the crimes charged or relate to any other issue the jury was asked to decide. *Id.* at ¶ 87. Therefore, the juror's statement was not "extraneous prejudicial information" under CRE 606(b). *Id.*

¶ 22 Applying these holdings to the facts of this case, we conclude that the unknown juror's statement was not relevant to the issues in the case because it did not relate to a definition or element of the charges, nor did it relate to any issue the jury was asked to decide. Moreover, Owens does not identify, nor have we found, any evidence to show that the unknown juror obtained the information from independent investigation. Accordingly, the statement was inadmissible under CRE 606(b).

¶ 23 We are not persuaded otherwise by Owens' reliance on *Ravin v. Gambrell*, 788 P.2d 817, 822 (Colo. 1990), and find that case distinguishable. In *Ravin*, during the second day of deliberations, a juror told the bailiff she was not feeling well, said she was the only juror who favored the respondent, asked whether a unanimous verdict was required, and asked how much longer deliberations would continue in the absence of unanimity. *Id.* at 819. In front of the other jurors, the bailiff responded that a unanimous verdict was

11

required and that the judge could require deliberations to continue for two weeks. *Id.* The supreme court concluded the bailiff's comments constituted extraneous prejudicial information and that there was a reasonable possibility that they influenced the jury's verdict. *Id.* at 821. Here, in contrast, an unknown deliberating juror, not a third party, imparted information based on life experience to the other jurors that did not concern an issue the jury was required to decide. Absent evidence that the unknown juror obtained this information from independent research or investigation, it was not improper for the juror to rely on their prior knowledge and experiences during deliberations. *See Kendrick v. Pippin*, 252 P.3d 1052, 1065-66 (Colo. 2011) (a juror's use of background in engineering and mathematics to calculate speed, distance, and reaction time for the jury did not constitute "extraneous" information under CRE 606(b)), *abrogated on other grounds by Bedor v. Johnson*, 2013 CO 4.

¶ 24 Finally, because we conclude the unknown juror's statement is not extraneous information, we need not address whether it prejudiced Owens.

¶ 25    Accordingly, we discern no error in the trial court's denial of Owens' motion for a new trial.

### III.    Prejudicial Testimony

¶ 26    Owens next contends that the trial court erroneously denied his motion for mistrial based on the victim's nonresponsive answer to a question during direct examination in which she said Owens had previously "robbed" a store. We discern no error because the trial court sustained Owens' objection and provided the jury with an oral and written curative instruction.

### A.    Additional Facts

¶ 27    Owens previously worked at Pacific Ocean Market. The store posted Owens' picture in the shop window due to his involvement in numerous shoplifting and trespassing incidents. Before trial, the prosecutor informed the court and counsel that she planned to ask the victim questions about her attempts to identify Owens, including whether Pacific Ocean Market employees recognized him.

¶ 28    During direct examination, the prosecutor asked, "What did you do on your own to try to find out who hit you and took your purse on September 16th, 2020?" The victim responded that she went to the Pacific Ocean Market with a coworker and asked an

13

employee where they kept pictures of the people who had previously "robbed the store." She said her coworker had told her that Pacific Ocean Market had Owens' picture "plastered on the window." Defense counsel objected and moved for a mistrial. While the trial court agreed the response was improper, it found the prosecutor's question proper and that the victim's response was not attributable to prosecutorial "bad faith." The court denied Owens' motion for mistrial, but it offered to provide a curative instruction telling the jury to ignore the statement. Defense counsel tendered a proposed instruction that the court accepted, read to the jury, and then provided in writing as a jury instruction. That instruction provided:

> During this trial, [the victim] testified that Mr. Owens had previously robbed the Pacific Ocean Market. You are instructed that this is not evidence, and you are not to use it for any purpose. Mr. Owens has never robbed the Pacific Ocean Market and has never been accused of doing so.

¶ 29 Neither counsel mentioned this evidence in their closing arguments.

## B. Standard of Review and Applicable Law

¶ 30 "A mistrial is a drastic remedy that is warranted only when the prejudice to the accused is so substantial that its effect on the jury

14

cannot be remedied by other means." *People v. Cousins*, 181 P.3d 365, 373 (Colo. App. 2007) (quoting *People v. Dore*, 997 P.2d 1214, 1221 (Colo. App. 1999)). A trial court has broad discretion to grant or deny a motion for a mistrial, and we will not reverse its decision absent an abuse of that discretion and prejudice against the defendant. *People v. Salas*, 2017 COA 63, ¶ 9. A court abuses its discretion if its decision is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law. *People v. Grant*, 2021 COA 53, ¶ 12.

¶ 31 "Factors relevant in considering whether a mistrial should be declared include the nature of the inadmissible evidence, the weight of the admissible evidence of guilt, and the value of a cautionary instruction." *People v. Tillery*, 231 P.3d 36, 43 (Colo. App. 2009), *aff'd sub nom. People v. Simon*, 266 P.3d 1099 (Colo. 2011).

### C.    Analysis

¶ 32 We discern no reversible error resulting from the victim's testimony, for three reasons. First, the record shows the victim's statement was nonresponsive and that the prosecutor did not intentionally elicit it to taint the jury. Indeed, the prosecutor informed the court and counsel that she intended to ask the

15

question before the trial began and the record does not indicate that anyone expected the response the victim gave. Thus, we are not convinced that *People v. Goldsberry*, 509 P.2d 801, 802 (Colo. 1973), where the court found intentional misconduct by the prosecutor, and on which Owens relies, compels a different result.

¶ 33 Second, we conclude the trial court's curative instruction remedied any prejudice flowing from the victim's testimony. *See Vigil v. People*, 731 P.2d 713, 716 (Colo. 1987) ("Generally, an error in the admission of evidence may be cured by withdrawing the evidence from the jury's consideration and instructing the jury to disregard it."). By instructing the jury that Owens had never robbed or been accused of robbing the store, the court cured any error that might have occurred. Absent contrary evidence, we presume the jury understood and followed this instruction. *See People v. Abdulla*, 2020 COA 109M, ¶ 58 ("[W]e employ the presumption that the jury understands and applies the given instructions unless a contrary showing is made . . . .")

¶ 34 Third, we reject Owens' assertion that the victim's testimony was "so prejudicial that, but for the exposure, the jury might not have found the defendant guilty." (Quoting *People v. Snider*, 2021

16

COA 19, ¶ 34 n.2.)  Instead, we conclude the testimony was fleeting enough not to warrant a mistrial.  *See People v. Abbott*, 690 P.2d 1263, 1269 (Colo. 1984) ("[T]he mere reference to an accused's past criminal act is not per se prejudicial, requiring a new trial."); *see also People v. Krueger*, 2012 COA 80, ¶ 73 (holding that a witness's single, brief reference to having met the defendant in jail was not prejudicial enough to warrant a mistrial).

¶ 35     In sum, because the prosecutor did not act in bad faith, the court provided a curative instruction, and the statement was fleeting and not mentioned in closing argument, we discern no abuse of discretion in the court's denial of Owens' motion for a mistrial on this basis.  *See People v. Lawson*, 551 P.2d 206, 209 (Colo. App. 1976).

## IV.   Disposition

¶ 36     The judgment is affirmed.

JUDGE SCHOCK and JUDGE SULLIVAN concur.