# JUNE, 1924.

### MRS. G. W. FRAZER v. THE STATE.

No. 7764. Delivered June 25, 1924.

Rehearing denied Feb. 4, 1925.

#### 1.—Murder—Evidence—Clothing Worn by Deceased—When Admissible.

Clothing worn by the deceased, at the time of the homicide are admissible in evidence, if their introduction serves a useful purpose, in shedding light on conflicting theories as to how the wounds were inflicted upon the deceased, or the position of the body of the deceased at the time the shots were fired.

##### ON MOTION FOR REHEARING.

#### 2.—Same—Misconduct of Jury—Discussion of Case Is Not.

In determining what is proper, and what is improper discussion among jurors, regard must be had of the fact that the jury is composed of men of different walks of life, avocations, and necessarily views that would be affected by their past experience and situation. They could hardly arrive at a solution of their differences, without discussion of the facts before them, and each man's discussion would necessarily be tinged or affected by his own viewpoint, and experience. They have a right to weigh testimony that comes before them, and to discuss same in the light of their experience and understanding. No improper discussion by the jury is shown in the instant case.

Appeal from the District Court of El Paso County. Tried below before the Hon. W. D. Howe, Judge.

Appeal from a conviction for murder; penalty, ten years in the penitentiary.

The opinion states the case.

*S. D. Stennis, Jr.,* of Carlsbad, N. M., and *Owen & Bridgers,* of El Paso, for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of El Paso County of murder, and her punishment fixed at ten years in the penitentiary.

Appellant was convicted for the murder of her husband and there appears no dispute of the fact that she shot and killed him in their apartment in El Paso on May 31, 1922. The State proved the killing, and a number of threats made by appellant to kill deceased. The defensive theory was that of self-defense. We see no good end to be attained by a recital of the facts.

There is but one bill of exceptions which presents appellant's complaint of the introduction in evidence of the clothes of deceased, worn by him at the time of the shooting. There is found in the testimony of the appellant on the stand her statement that at the time she shot deceased he was facing her. There seems no doubt that the clothing presented evidence of the fact, that several of the shots were fired at an angle. In such case the rule seems to be that when the introduction of the clothing tends to solve any controverted issue in the case, it is admissible to go before the jury. The bill under discussion is qualified by the learned trial judge with the statement that it was the contention of the State that deceased was shot while sitting down or stooping over polishing or about to polish his shoes, and that all of the gun shot wounds were inflicted while he was in that position, and that the clothing in evidence served to illustrate and solve the question of the relative positions of the parties, and tended to contradict the statement of appellant as to how the shooting took place. We are of opinion that said bill of exceptions presents no error.

Upon the presentation of an objection to the court's charge because it submitted the law of manslaughter, the learned trial judge accepted the view of appellant's counsel and re-wrote said charge omitting therefrom the law of manslaughter.

Two special charges were presented to the court and refused. Neither by notation on same, nor by separate bills of exception is there complaint of the refusal of said charges.

Being of opinion that the evidence amply justified the verdict of the jury and that the record reflects no error, an affirmance will be ordered.

*Affirmed.*

ON REHEARING.

LATTIMORE, Judge.—Appellant predicates her motion for rehearing upon the proposition that there was misconduct on the part of the jury which matter was not discussed by us in the original opinion, the misconduct consisting of the receiving of testimony of a material character and nature which had not been given by any witness, it being stated in the motion for new trial that three or more men on the jury testified in the jury room as to the fact of powder burns and the distance at which powder from a gun or pistol would leave powder burns, and how far powder burns would carry from a pistol

the size used by appellant; also that one of the jurors testified that the kind of hole in the hat supposed to have been worn by deceased showed conclusively that appellant was closer to the deceased than she said she was and that she could not have fired the shots the way she testified she did, which fact was shown by the hole in the hat worn by deceased, etc.

In support of the motion two jurors appeared and gave testimony upon the hearing of said motion. We find nothing in the testimony of juror Given in anywise supporting the proposition advanced by appellant. Juror Eminger swore that he had been a policeman and had been familiar with the use of firearms and that there was some discussion in the jury room as to how far powder would burn. Asked if he did not tell the jury his opinion as to how close a shot would have to be fired to make the powder burns on the hat worn by deceased, that appeared from an examination, the juror said that he did not tell the jury what his opinion was but that he had an opinion of his own. He said that he did tell them that the gun would have to be very close in order to powder burn, but did not say how close. He said that if any of them paid any attention to what he said he did not know. He said there was some discussion in the jury room as to what kind of a hole a rifle or revolver would make in felt,—a felt hat or any felt, and that he expressed the opinion that a bullet fired any distance from a 32 revolver into a felt hat would cut a hole just as big as the bullet and that it would not be necessary for the shot to be over a foot away to cut a hole in the felt. The juror said that they could not come to an agreement without discussing the facts and that he stated his ideas about these things to the other jurors, and that there were other members of the jury who expressed their views.

In determining what is proper and what is improper discussion among jurors, regard must be had for the fact that the jury are supposedly men of different walks of life, avocations, and necessarily views that would be affected by their past experiences and situations. They could hardly arrive at a solution of their differences without discussion of the facts before them, and each man's discussion would necessarily be tinged or affected by his own viewpoint and experiences. As said by the court in Reagan v. State, 57 Texas Crim. Rep., 646:

"We do not understand that juries, in reaching their verdicts, are denied the rights of reasoning out propositions that are submitted to them and drawing deductions and conclusions therefrom. They have a right to weigh testimony that comes before them; * * * This was not additional testimony and we think was a legitimate remark on the part of the jury."

Turning to the statement of facts to ascertain whether the discussions which took place in the jury room, as testified to by juror Eminger, contained any new or hurtful facts, we are unable to find same.

The State introduced no eyewitness to the killing, no one being present at the time save deceased and appellant. The State's witnesses who described the condition and appearance of deceased's body when they found it shortly after the homicide, stated that same was lying in a bath rom with the feet toward the entrance door and the head back by the toilet, there being a revolver lying in the hands of deceased, none of the cartridges in which had been exploded. The bath room was described as being about six feet in width and eight feet long. Near the body of deceased lay his hat in the front of which was a bullet hole and the hat was powder burned. There was a wound in the left hand or wrist of the deceased which was also powder burned; a wound in the side of his head, and a wound in the side of his body. Under the hat of deceased was found a rag, apparently used for shining shoes. Appellant, testifying in her own behalf, said that when deceased came home on the night of the homicide that he was drinking and ugly; that he went into the bath room and sat down on the toilet and began polishing his shoes with a rag; that she came to the door of the bath room and began to talk to him in a remonstrating way and that he got to his feet with a threat and demonstration as though to draw a pistol; that she turned at once and got her pistol from the head of her bed which stood near the door of the bath room and returned immediately to the bath room door with her pistol in her hand. She said that as she stepped in front of the bath room door deceased was either just inside of said door or was partly in it and that he seemed to be making motions toward his pistol and that she at once began firing. She did not undertake to show how close she was to deceased at the time, but it is a fair inference that she must have been very close. She testified that when she fired the first shot deceased started to fall and was in a stooping position when she fired again, and that she stepped into the bath room and fired again and again. She did not testify that she was not close enough to deceased to have made the powder burns on his hat or on the different parts of his body. She introduced no witness and neither did the State to testify as to the distance powder would burn when a gun was fired, and the question of guilt would seem in no way affected by whether the bullet hole was clean cut or not, or the distance powder would burn.

Whether the bullet hole in the hat was clean cut or not and the distance that powder would burn clothing, a felt hat, or flesh, even though discussed by any or all of the jurors in their retirement, and even though divergent opinions on the subject were expressed by different members of the jury, resulting from their different experiences in life, would not seem to us to be the introduction of any testimony or the bringing into the case of any new or hurtful fact. We have given this matter our careful thought and scrutiny in view of the able pres-

entation of it by distinguished counsel representing appellant, but regret that we are unable to agree with him that the matter presents reversible error.

Appellant renews her complaint of the introduction of the bloody clothing worn by deceased. We need discuss this no further than to refer again to the qualification placed on the bill of exceptions by the learned trial judge and referred to in our original opinion, in which the court states that the clothing introduced served a useful purpose in shedding light on conflicting theories as to how the wounds were inflicted upon deceased.

The motion for rehearing will be overruled.

                                                                        *Overruled.*