No. 19,331.

GLADYS M. BUTTERS *v.* DEE WANN, D/B/A
DEE WANN TRUCKING CO., ET AL.
(363 P. [2d] 294)

Decided July 24, 1961. Rehearing denied August 14, 1961.

Mr. Fred M. Winner, Mr. Warren O. Martin, for plaintiff in error.

Mr. Myron H. Burnett, for defendants in error.

*En Banc.*

Mr. Chief Justice Hall delivered the opinion of the Court.

Plaintiff in error was plaintiff and defendants in error were defendants in the trial court. We refer to the parties as they there appeared, or by name.

Plaintiff sought damages for the wrongful death of her husband, for personal injury to herself, loss of earnings, medical expenses, and for loss of an automobile, all arising out of a collision which occurred on July 6, 1958, at the intersection of East Forty-sixth Avenue and Clayton Street in Denver, Colorado.

Plaintiff was a passenger in an automobile jointly owned with her husband, being driven by her husband, and which collided with a truck owned by defendant Dee Wann, doing business as Dee Wann Trucking Co. The Dee Wann truck was then being driven in an allegedly negligent manner by defendant, Kenneth Duane Adams, an employee of the trucking company.

Defendants denied negligence and charged plaintiff and her husband with contributory negligence.

The action was tried to a jury over objection of plaintiff. The jury returned a verdict in favor of defendants. Plaintiff's motion for a new trial was denied.

Plaintiff is here by writ of error seeking reversal, and urges three grounds therefor:

1. Error in ordering the case tried to a jury, when defendants failed to make timely demand as required by Rule 38, R.C.P. Colo., and the court improperly granted a jury trial under Rule 39, R.C.P. Colo.

2. Prejudicial misconduct by defendants' counsel in questioning plaintiff concerning the revocation of her husband's driver's license.

3. Serious and prejudicial misconduct on the part of the jury.

We will discuss these points in the order listed.

First, plaintiff did not at any time demand a jury trial; in fact, at all times objected to a jury trial. Defendants failed to demand a jury trial within ten days after October 16, 1958, the date of service of the last pleading directed to the issues in the case, as provided and required by Rule 38, R.C.P. They did, however, on October 21, 1959, more than a year thereafter, demand a jury trial.

Plaintiff contends that defendants, not having made timely demand for a jury trial, waived their right thereto as provided by Rule 38, R.C.P., and that the court without timely formal request therefor was without authority to order a jury trial.

Under our recent decision in *Jaynes v. Marrow*, 144 Colo. 138, 355 P. (2d) 529 (decided September 19, 1960), this question has been determined contrary to plaintiff's contention. The trial court was within its right and power in ordering a jury trial, and error assigned to such ruling is without merit.

Plaintiff's second and third grounds urged for reversal will be considered together.

Plaintiff's claim of alleged prejudicial misconduct by defendants' counsel is based upon cross-examination of

plaintiff concerning the deceased's continuity of employment as a truck driver as bearing upon his earnings record. The following are the pertinent questions and answers relating to this contention:

"Q. Was he continuously employed? A. He was continuously employed. Q. He was continuously employed — A. — Yes. Gigantic sold their route services in December. * * * Q. Well now, as a matter of fact, your husband wasn't continuously employed driving a truck for the year preceding — that is, during the time his license was revoked, was he? MR. WINNER: I object to that and ask that counsel be reprimanded. He knows it is highly improper. THE COURT: Sustained. * * * THE COURT: Ladies and gentlemen, the last question that was asked by defendants' counsel just before we adjourned yesterday afternoon concerning the revocation of Mr. Butters' license — objection to that by plaintiff's counsel has been sustained, and the jury is instructed to disregard it."

Plaintiff's attorney did not move for a mistrial but apparently was content to rely on the court's instruction to disregard the prejudicial question as sufficient to remove any possible prejudice caused by the improper question. This question was highly improper and in view of other events hereinafter set forth may have been prejudicial, which question we need not resolve because of the fact that the case must be reversed on another ground. On retrial, this error should not be repeated.

Events hereinafter related indicate that the court's instruction to disregard this prejudicial question was flagrantly disregarded by one of the jurors. During the course of the trial on September 12, 1959, without the knowledge of either party or their counsel, one of the jurors telephoned Bill Cullen, the former employer of the deceased and the person to whom reference was made by defendants' counsel in the cross-examination relating to the revocation of plaintiff's driver's license.

This juror inquired of Cullen about the driver's license revocation and the amount of drinking the deceased had done, and further, he discussed with Cullen some of the facts of the case and the impression made upon him by certain of plaintiff's witnesses. The foregoing matters appear by way of uncontradicted affidavits and a stenographic transcript of a subsequent telephone conversation between Cullen and the juror on September 15, 1959, after the trial had been concluded.

This all transpired in spite of the fact that the trial court had given the jury the general cautionary instruction not to discuss the case with anyone during the course of the trial. The matters were all brought to the attention of the trial court in plaintiff's motion for a new trial.

This juror, in total and deliberate disregard of the court's instructions, made an independent investigation into matters not permitted to be inquired into at the trial. In the juror's own words:

" * * * I was just curious as to who he [the deceased] was, and if he did a hell of a lot of drinking, * * * maybe I violated the rule, maybe I didn't, in calling you, I was just — I wasn't asking for anything, I was just looking to see what I could do, maybe, to clear my thinking on this alcohol thing, but the alcohol wasn't the whole basis of it, there were several things involved in it * * *."

It is not the province of the court to speculate, conjecture or determine what or how much effect upon a verdict the gross misconduct of a juror or jurors may in fact have in a particular case. While a correct determination might be possible in some cases, the inquiry would be impractical and fruitless in many cases and in all cases contain an element of speculation.

The proper function of the court is to hear the facts of the alleged misconduct and to determine as a matter of law the effect reasonably calculated to be produced upon the minds of the jury by such misconduct. *McLean v. The People*, 66 Colo. 486, 180 Pac. 676.

The law is well stated in *Panko v. Flintkote Co.*, 7 N.J. 55, 80 A. (2d) 302, from which case we quote with approval:

"It is well settled that the test for determining whether a new trial will be granted because of the misconduct of jurors or the intrusion of irregular influences is whether such matters could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge. If the irregular matter has that tendency on the face of it, a new trial should be granted without further inquiry as to its actual effect. *The test is not whether the irregular matter actually influenced the result, but whether it had the capacity of doing so.* The stringency of this rule is grounded upon the necessity of keeping the administration of justice pure and free from all suspicion of corrupting practices. It is said to be 'imperatively required to secure verdicts based on proofs taken openly at the trial, free from all danger by extraneous influences.' * * *." (Emphasis supplied.)

 Material to the issue of defendants' liability in the present case was the question of the deceased's contributory negligence and his intoxication at the time of the accident. The extrajudicial investigation made during the course of the trial by the juror of the deceased's drinking habits, intoxication on other occasions and the revocation of his driver's license, matters which had been specifically declared incompetent and inadmissible by the court, is misconduct as a matter of law the tendency of which is to influence the mind of the juror and for which a new trial should have been granted. As was stated in *Scott v. Tubbs*, 43 Colo. 221, 95 Pac. 540:

" * * * Nor should the court consider whether the verdict was or was not influenced by the petitioner. The conduct complained of is so manifestly improper that there is but one course open. * * *."

It is noted that plaintiff in no way produced or prompted the misconduct of the juror in the case and our

decision here is in accord with that of *Denver Alfalfa Milling v. Erickson*, 77 Colo. 583, 239 Pac. 170.

Trial courts are ever vigilant in seeking to prevent extraneous matters from being presented and possibly influencing the minds of jurors. Jury verdicts must be based upon evidentiary facts properly before the jury for its consideration and determination. To condone this juror's misconduct and to assume that his mind was uninfluenced by the extrajudicial investigation of incompetent inadmissible matters, finds no sanction in the law. Such conduct deprives plaintiff of the fair and impartial trial to which every litigant under our law is entitled.

The judgment is reversed and the cause remanded for retrial.

MR. JUSTICE FRANTZ not participating.