[Civ. No. 59549. Second Dist., Div. Five. Dec. 3, 1980.]

DANIEL WAGNER, Plaintiff and Appellant, v.
IRENE DOULTON et al., Defendants and Respondents.

946

**COUNSEL**

Michael J. Piuze for Plaintiff and Appellant.

Giles, Callahan, McCune, Willis & Edwards and Steven D. Hillyard for Defendants and Respondents.

OPINION

HASTINGS, J.—Daniel Wagner brought a personal injury action against Irene Doulton and Nemos Secret Harbor Development for personal injuries sustained in a collision between his motorcycle and defendants' automobile on Pacific Coast Highway. After a trial which lasted over a month the jury returned a verdict in favor of defendants.

Appellant Wagner moved for a new trial on the grounds, inter alia, of jury misconduct. His motion was denied. Although numerous grounds were raised below, appellant has limited this appeal to the alleged misconduct of one juror.

In support of the motion for a new trial, two jurors presented affidavits to the trial court alleging that another juror, Edwin Johnston, an engineer, had prepared a scale map of the location of the accident and the vehicles involved and brought it into the jury room. The map was drawn on either plain or graph paper and was shown to the other jurors.

Edwin Johnston also submitted his affidavit, dated December 19, 1979, which declared in part: "That while deliberating on the *Wagner vs Doulton* case, I prepared a diagram of the Malibu accident location from and only from information that was presented in court. No independent investigation was made by me, and I had never visited the actual accident scene or received any information other than that which was presented in court. [¶] That all of the information that was used for the diagram that I prepared during the deliberations was taken from my notes made from the testimony in court or from my memory of the evidence that was presented in court."

At the hearing for the motion for a new trial, the court noted that Mr. Johnston's affidavit did not clearly deny that the map he prepared was drawn outside the jury room.

"THE COURT: I do see a problem in bringing a map into that jury room. [¶] As I analyze it, it would have to be something prepared at home, not in the jury room. [¶] Now, I know your position is he did it in the jury room. This is not the way I read the affidavit. It is on drafted paper, drawn to scale and brought in."

After oral argument the court granted a continuance until the next day to allow the defendants' attorney to get another affidavit from Mr. Johnston and from any of the other jurors to clarify the issue of where the map or diagram had been prepared.

The following day defendants' attorney filed with the court a second affidavit from Mr. Johnston, dated December 27, 1979, which, although similar to his first affidavit, also stated: "I prepared a diagram in the jury deliberation room of the Malibu accident location from and only from information that was presented in court. . . ."

Defendants' attorney also presented three additional affidavits of other jurors supporting Mr. Johnston's statements that he prepared the diagram in the jury room.

After arguments were heard on the conflicts between the affidavits, the trial court denied appellant's motion for a new trial.

Appellant has summarized his principal position on appeal by the following question: "Was the plaintiff deprived of a fair and impartial trial by reason of the conduct of a juror who prepared a scale diagram outside the courtroom and presented his own extrajudicial 'evidence' during jury deliberations?"

■ It is well settled that the granting of a motion for a new trial rests completely within the discretion of the trial judge and will not be overturned unless there is a clear abuse of discretion. (*Jiminez* v. *Sears, Roebuck & Co.* (1971) 4 Cal.3d 379, 387 [93 Cal.Rptr. 769, 482 P.2d 681, 52 A.L.R.3d 92].) We find there was no abuse of discretion by the trial judge.

The trial court had before it two conflicting sets of affidavits on the question of whether the diagram was prepared in the jury room, or was prepared outside and then brought into the jury room. ■ "'When an issue is tried on affidavits . . . and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed.[1] [Citations.]" (*Weathers* v. *Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 108 [95 Cal.Rptr. 516, 485 P.2d 1132].) ■ Weighing the credibility of conflicting declarations on a

motion for a new trial is uniquely within the province of the trial court. (*Id.* at p. 109.) By denying appellant's motion for new trial, the court by implication found that Mr. Johnston did prepare the diagram in the jury room and that there was no jury misconduct.

Appellant also argues that Mr. Johnston's training as an engineer allowed him to "unfairly sway" the other jury members by his diagram of the accident scene. We find this argument to be without merit.

Interestingly, there is little decisional law on the question of what is proper discussion among jurors during deliberations, and the few cases are quite ancient. In *Baker* v. *Borello* (1902) 136 Cal. 160 [68 P. 591], the California Supreme Court approved an instruction which told the jurors to deliberate in light of their general knowledge on the subject. "Jurors, in weighing evidence, always exercise their judgment in the light of their own general knowledge of the subject in hand, whether instructed to do so or not; and a judgment will not be reversed whether they are or are not so instructed." (*Id.* at p. 167.) (See *Wiley* v. *Young* (1918) 178 Cal. 681, 687 [174 P. 316].)

In an American Law Reports annotation, 156 A.L.R. 1033, decisional law was collected and analyzed on the question: "Is it permissible for members of the jury, during their deliberations, to express their opinion on certain facts in issue when it appears that such opinion is based upon or influenced by their individual observations or experiences made in connection with their trade, business or profession?" The author points out the distinction between discussion by jurors of matters of personal and general knowledge and experience, and the more specific and individual knowledge of a person's trade, business or professional life. While noting that jurors may properly use the knowledge and experience which they possess as intelligent persons, using knowledge gained through a profession raises the danger of making that juror appear as an expert and giving him added authority. The author concludes, based on all the cases on point, that an expression of opinion by a juror which is based upon or influenced by his own experience in his trade, business or profession is not grounds for reversal or a new trial when: (1) it could not have influenced the jury because it concerned an irrelevant fact or was not sufficiently related to the subject under consideration, (2) it was strictly predicated upon the evidence in the particular case under consideration, or (3) although predicated upon or

influenced by his special experience, it referred to facts which are matters of common knowledge. (156 A.L.R. 1036.)

■ We believe the appropriate rule has been well articulated by an opinion of a sister state: "In determining what is proper and what is improper discussion among jurors, regard must be had for the fact that the jury are supposedly men [and women] of different walks of life, avocations, and necessarily views that would be affected by their past experiences and situations. They could hardly arrive at a solution of their differences without discussion of the facts before them, and each man's discussion would necessarily be tinged or affected by his own viewpoint and experience." (*Frazer* v. *State* (1924) 99 Tex.Crim. 89 [268 S.W. 164, 166].)

■ While it is a fundamental rule that jurors may not receive evidence out of court and may not conduct experiments which put them in possession of evidence not offered at trial (*People* v. *Pierce* (1979) 24 Cal.3d 199, 207 [155 Cal.Rptr. 657, 595 P.2d 91]; *Higgins* v. *L.A. Gas & Electric Co.* (1911) 159 Cal. 651, 656-657 [115 P. 313]; *People* v. *Lessard* (1962) 58 Cal.2d 447, 454 [25 Cal.Rptr. 78, 375 P.2d 46]; see generally 95 A.L.R.2d 351) it is not misconduct for a juror to make a diagram in the jury room based solely on the evidence received in court. ■ Nor should the fact that a juror is an engineer and perhaps more skillful at drawing make any difference. Although there are no California cases directly on point, a similar question was presented the Kansas Supreme Court in *State* v. *Keehn* (1911) 85 Kan. 765 [118 P. 851]. In that case, a juror prepared a map during trial from the evidence presented. While the jury was deliberating they requested a map which had been prepared during trial and used to examine witnesses, but which had been found to be inaccurate by the court. The judge denied their request, and so the juror submitted his map for the jury to consider. The defendant in the case claimed that the map drawn by the juror was highly unsatisfactory to his case because of its inaccuracies. In holding that there was no juror misconduct, the court drew a distinction between foreign evidentiary matter brought into the jury room, and the juror's own opinions and ideas: "The sketch complained of was not a foreign evidentiary document like the atlas which the bailiff gave the jury. . . . It represented nothing more than [the juror's] idea of what the testimony disclosed. This idea he could present to the jury without misconduct. . . ." (*Id.* at p. 855.) In our case, the diagram prepared by

juror Johnston was a pictorial representation of his idea of the testimony he heard during trial.

The judgment is affirmed.

Kaus, P. J., and Ashby, J., concurred.