**T.S., Minor, By PUEBLO COUNTY DEPARTMENT OF SOCIAL SERVICES, and J.S. As Next Friend, Petitioners-Appellees,**

v.

**G.G., Respondent-Appellant.**

**No. 82CA0754.**

Colorado Court of Appeals, Div. II.

Feb. 23, 1984.

Napoleon S. Crews, Jr., Sp. Asst. County Atty., Pueblo, for petitioners-appellees.

Kettelkamp, Vento & Brown, P.C., W.C. Kettelkamp, Jr., Pueblo, for respondent-appellant.

SMITH, Judge.

This is a paternity proceeding in which the Pueblo County Social Services sought to have respondent, G.G., declared the fa-

ther of the child, T.S. Following an adverse jury verdict, respondent moved for a new trial on the basis of juror misconduct. From denial of that motion, he appeals. We reverse and remand for a new trial.

Prior to trial, the court ordered that blood typing tests be performed on the minor, the minor's mother, and respondent using the Human Leukocyte Antigen, or HLA, test. The physician who performed this test testified giving his expert opinion, based on the HLA test, that there was an 88.54% probability that respondent was the biological father of the minor child.

Respondent presented expert testimony challenging the procedures used by the physician in conducting the test and the conclusions reached. This challenge centered on the physician's failure to use the combination of seven tests recommended in a treatise jointly prepared by the American Bar Association and the American Medical Association on blood typing in paternity suits.

The issue in this regard thus revolved around whether the HLA test by itself was sufficient to establish paternity or whether the group of tests suggested by the ABA and the AMA treatise should have been used.

In his motion for new trial, respondent alleged that the foreman of the jury returned to her home for lunch during the jury's deliberation and while there read an article on HLA testing which she found in a "pre-med" textbook belonging to her son. It is alleged that this occurred prior to the point at which the issue of paternity was decided.

The testimony at the hearing on the motion for new trial disclosed that one juror recalled the foreman reporting that she had read her son's pre-med textbook which indicated that HLA testing was the most reliable method of testing, and that other means of testing were unnecessary when the HLA tests were used, and that what she had learned supported the testing physician's testimony. The second juror testified that the foreman had said that she had read an article on HLA testing and made

some comment about it although she could not remember exactly what that comment had been. A third juror, on the other hand, testified that the foreman had told the jury that she had read her son's pre-med textbook and that the book indicated that HLA testing was the most modern means of testing available in a paternity suit. This juror further testified that the foreman had also said that the article indicated that no other tests need be used and that, therefore, they could accept the testimony of the doctor who performed the tests and disregard the testimony from respondent's expert.

There is no dispute here that it was misconduct for a member of the jury to consult extraneous materials even if, as she indicated, the purpose was merely to determine what the initials HLA stood for. *See Alvarez v. People*, 653 P.2d 1127 (Colo. 1982). That misconduct was compounded when she disclosed to other jurors the result of her research and her opinion relative thereto. The question here, therefore, is not whether this was misconduct but whether it should require reversal of the jury's verdict.

■ For jury misconduct to mandate reversal, the party seeking relief must establish that the misconduct had the capacity to have influenced the result.

The law that has been applicable in civil actions is well stated in *Panko v. Flintkote Co.*, 80 A.2d 302, 7 N.J. 55 (1951), which was quoted with approval in *Butters v. Dee Wann*, 147 Colo. 352, 363 P.2d 494 (1961).

"[T]he tests for determining whether a new trial will be granted because of the misconduct of jurors or the intrusion of irregular influences is whether such matters could have a tendency to influence the jury in arriving at its verdict in a manner inconsistent with the legal proofs and the court's charge. If the irregular matter has that tendency on the face of it, a new trial should be granted without further inquiry as to its actual effect. *The test is not whether the irregular matter actually influenced the result,*

but whether it had the capacity of doing so. The stringency of this rule is grounded upon the necessity of keeping the administration of justice pure and free from all suspicion of corrupting practices." (emphasis in *Butters*)

We recognize this is a somewhat less stringent rule than that adopted in *People v. Cornett,* (Colo.App. No. 82CA1242 ann'd. February 16, 1984) as appropriate in criminal cases where the same type of misconduct has occurred. In *Cornett,* it was held that improper communications to jurors specifically concerning the punishment or sentencing of a defendant will be considered presumptively prejudicial. We believe that in criminal cases where there exists a presumption of innocence, and the burden of proof is beyond a reasonable doubt, public policy considerations justify the imposition of such a presumption. However, in civil cases we are convinced that a more liberal test is appropriate.

Although CRE 606(b) prohibits jurors from testifying as to the effect upon their deliberations of improper matters which have come before them during their deliberations, the capacity of the improper information to have influenced their verdict may be ascertained from an examination of the improper information itself. Examining the jurors' testimony here in that light, we conclude that the evidence communicated by the foreman to the other jurors was such that it possessed the capacity to influence the jury's verdict.

The crucial evidence at trial was the testimony of the testing physician and respondent's expert who essentially disagreed as to whether the HLA test, by itself, was sufficient to establish paternity. The introduction of an additional opinion as to the validity or persuasiveness of the test by way of the textbook may well have tipped the balance and influenced the jury in arriving at its verdict. Such acts, by a juror, while deriving from a legitimate concern for a proper result, are nonetheless to be severely comdemned, and if, as here, they have the capacity to influence the jury

the prejudiced party is entitled to a new trial.

Judgment reversed and cause remanded for a new trial.

ENOCH, C.J., and KELLY, J., concur.