**Cheryl A. KENDRICK, Plaintiff–Appellant,**

v.

**Holly L. PIPPIN, Defendant–Appellee.**

**No. 08CA1487.**

Colorado Court of Appeals, Div. VII.

Aug. 6, 2009.

382

Law Office of Robert A. Garcin, Robert A. Garcin, Loveland, Colorado, for Plaintiff-Appellant.

The Ukasick Law Firm, LLC, Troy A. Ukasick, Loveland, Colorado, for Defendant-Appellee.

Opinion by Judge J. JONES.

This is a personal injury case arising out of an automobile accident. A jury found that defendant, Holly L. Pippin, was not negligent in causing the accident, in which her pickup truck struck the car of plaintiff, Cheryl A. Kendrick. Ms. Kendrick appeals, contending that the district court erred when it (1) gave the jury a "sudden emergency" instruction because there was no competent evidence of a sudden emergency; (2) failed to give the jury a res ipsa loquitur instruction because the manner in which the accident occurred gave rise to a presumption that Ms. Pippin was negligent; (3) denied her motion for a new trial because a juror who was an engineer made calculations regarding speed, distance, and reaction time that she shared with the other jurors during deliberations; and (4) limited voir dire to thirty minutes per side because that amount of time was inadequate to question the seventeen prospective jurors. We perceive no error, and therefore we affirm.

## I. Background

The accident occurred on the morning of February 10, 2006, at the intersection of 37th Street and Highway 287 (North Garfield Street) in Loveland. It had been snowing for several hours. Ms. Kendrick was stopped (because of a red light) in the eastbound left turn lane of 37th Street. As Ms. Pippin was driving her pickup truck southbound on Highway 287, approaching 37th Street, she applied her brakes when the traffic signal turned from green to yellow. Her truck began to slide, and Ms. Pippin realized that she would not be able to stop before the signal turned red. In an effort to avoid colliding with any vehicles entering the intersection, she attempted to make a right turn onto westbound 37th Street. She could not complete the turn, however, and her truck went over the 37th Street center median, striking the driver's side of Ms. Kendrick's car.

Ms. Kendrick sued Ms. Pippin for negligence. A jury found that Ms. Kendrick had incurred injuries, damages, or losses, but that Ms. Pippin was not negligent and that Ms. Pippin's negligence, if any, was not a cause of Ms. Kendrick's injuries, damages, or losses.

## II. Discussion

### A. Sudden Emergency Instruction

Ms. Kendrick contends initially that the district court abused its discretion by instructing the jury on the sudden emergency doctrine. Specifically, she argues that only Ms. Pippin testified that the ice or snow on the road was unexpected, and that this testimony did not amount to competent evidence supporting the sudden emergency instruction.

The court gave the jury the following instruction on sudden emergency:

A person who, through no fault of his or her own, is placed in a sudden emergency, is not chargeable with negligence if the person exercises that degree of care which a reasonably careful person would have

exercised under the same or similar circumstances.

We review the district court's decision to give a particular jury instruction for an abuse of discretion. *Fishman v. Kotts,* 179 P.3d 232, 235 (Colo.App.2007). "We will find an abuse of discretion only upon a showing that the court's ruling was manifestly arbitrary, unreasonable, or unfair." *City of Brighton v. Palizzi,* 214 P.3d 470, 473 (Colo. App.2008).

Under the sudden emergency doctrine, "a person confronted with sudden or unexpected circumstances calling for immediate action is not expected to exercise the judgment of one acting under normal conditions." *Young v. Clark,* 814 P.2d 364, 365 (Colo.1991). The existence of such an emergency "is merely a circumstance to be considered in determining whether the actor's conduct was reasonable," and therefore does not preclude a finding that the actor was negligent. *Id.; accord Hesse v. McClintic,* 176 P.3d 759, 764 (Colo.2008). The questions whether there was a sudden emergency and, if so, whether the actor was negligent are questions of fact to be determined by the fact finder. *Hesse,* 176 P.3d at 764; *Davis v. Cline,* 177 Colo. 204, 208, 493 P.2d 362, 364 (1972); *Stewart v. Stout,* 143 Colo. 70, 72, 351 P.2d 847, 848 (1960); *Vu v. Fouts,* 924 P.2d 1129, 1132 (Colo.App.1996).

A party is entitled to have a sudden emergency instruction submitted to the jury "where competent evidence is presented that [the] party was confronted with a sudden or expected occurrence not of the party's own making." *Young,* 814 P.2d at 369; *Davis,* 177 Colo. at 208, 493 P.2d at 364–65; *Vu,* 924 P.2d at 1132. This is so even where the evidence of a sudden emergency is conflicting. *See Hetrick v. Dame,* 536 P.2d 1153, 1155 (Colo.App.1975) (not published pursuant to C.A.R. 35(f)).

Contrary to Ms. Kendrick's assertion, there was competent evidence that Ms. Pippin was confronted with a sudden emergency. Ms. Pippin testified that she had lived in Colorado her entire life and had almost thirteen years' worth of experience driving in snow and ice. She traveled the same route to work every day and was familiar with the traffic patterns of that route. Immediately prior to the accident, she had driven four miles through seven or eight intersections without losing control of her vehicle or sliding. She knew that it had been drizzling the night before the accident, but thought that the roads were "pretty clear" until she got to the intersection. She was driving at forty miles per hour, below the posted speed limit of forty-five miles per hour.

In light of Ms. Pippin's testimony, the district court properly instructed the jury on sudden emergency. *Cf. Stewart,* 143 Colo. at 72, 351 P.2d at 848 (sudden emergency instruction appropriate where both parties came upon a patch of ice on a curve of a mountain road and road to that point was dry); *Hetrick,* 536 P.2d at 1154–56 (sudden emergency instruction appropriate where the defendant's vehicle rear-ended the plaintiff's vehicle on a patch of ice on a slushy and icy road where road was generally snow packed, slushy, and icy in spots). Though Ms. Kendrick contends that Ms. Pippin's testimony was not corroborated by other evidence, she cites no authority for the proposition that such corroboration is required before a sudden emergency instruction may be given. Any discrepancies between Ms. Pippin's testimony and other testimony were for the jury to resolve; such discrepancies, if any, did not dictate that the court refuse to give the jury the instruction.

## B. Presumption of Negligence Instruction

Ms. Kendrick next contends that the district court erred when it rejected her proposed jury instruction which, in effect, would have told the jury that Ms. Pippin was presumed to have been negligent.

Ms. Kendrick tendered the following proposed instruction:

"Presumptions" are legal rules based upon experience or public policy and established in the law to help the jury decide the case.

When the driver of a motor vehicle hits another which is stopped, the law presumes that the driver was negligent.

■ We review the district court's rejection of a tendered jury instruction for an abuse of discretion. *Garhart v. Columbia/Healthone, L.L.C.*, 95 P.3d 571, 588–89 (Colo.2004).

Ms. Kendrick's proposed instruction purported to be derived from CJI–Civ. 4th 11:12 and *Iacino v. Brown*, 121 Colo. 450, 217 P.2d 266 (1950). That pattern instruction, however, by its terms is to be given in cases involving rear-end collisions, as was the case in *Iacino*. This case did not involve such a collision, and Ms. Kendrick cites no authority for the proposition that a presumption of negligence arises whenever a stationary vehicle is struck by another vehicle.

■ Indeed, such a presumption does not arise even in every case where a stationary vehicle is struck from behind by another vehicle. In *Bettner v. Boring*, 764 P.2d 829 (Colo.1988), the defendant's vehicle slid on ice, went off the road, and struck the plaintiff's vehicle, which had also slid off the road a few minutes earlier and was parked in a field, on the left rear corner. The plaintiff's attorney tendered presumption instructions tracking the language of a substantially similar prior version of CJI–Civ. 4th 11:12, but the district court rejected them. *Id.* at 830–32.

The supreme court held that the district court did not abuse its discretion in rejecting the instructions because (1) an instruction on such a presumption is appropriate only where both vehicles were located on the road or on the shoulder, were in relatively close proximity to each other, and were facing the same direction, *and* (2) a cause other than the defendant's negligence—specifically, the unexpected condition of the road—was not sufficiently eliminated by the evidence. *Id.* at 832–35 & n. 4.

The two automobile accident cases which Ms. Kendrick cites in support of her argument, *Trione v. Mike Wallen Standard, Inc.*, 902 P.2d 454 (Colo.App.1995), and *Eddy v. McAninch*, 141 Colo. 223, 347 P.2d 499 (1959), are distinguishable. In *Trione*, a vehicle being towed by a tow truck swerved into oncoming traffic. In *Eddy*, the defendant's vehicle's brakes had failed because the defendant had failed to maintain them. The

facts of those cases are not analogous to those here.

Much more on point is *Devenyns v. Hartig*, 983 P.2d 63 (Colo.App.1998). The plaintiff and the defendant were traveling on the same road, in the same direction. The defendant's vehicle, which was in front of the plaintiff's vehicle, spun on ice, causing it to be facing the plaintiff's vehicle, which then struck the defendant's vehicle. *Id.* at 66. The plaintiff's attorney tendered an instruction which would have told the jury the defendant was presumed negligent because her vehicle was on the wrong side of the road when the plaintiff's vehicle struck it. (The instruction was based on a previous version of CJI–Civ. 4th 11:10.) The district court rejected it. *Id.* at 70.

A division of our court held that the district court properly rejected the proposed instruction because the defendant's vehicle ended up facing in the wrong direction only because it spun on ice, and not because the defendant was driving on the wrong side of the road. *Id.* The division further concluded that because the defendant presented evidence of the weather and the icy condition of the road, the version of the presumption instruction which could have been given if the defendant had been driving on the wrong side of the road was not the one tendered by the plaintiff, but the one in a prior version of CJI–Civ. 4th 3:5 which tells the jury that it may, but is not required to, accept the presumption. The plaintiff had not requested that instruction, and the district court "was under no obligation to fashion it." *Id.*

■ The facts in this case are similar to those in *Bettner* and *Devenyns*. Ms. Pippin presented competent evidence that her car slid because of unexpected ice on the road. Ms. Kendrick's evidence did not sufficiently eliminate the possibility that the collision was caused by factors other than Ms. Pippin's negligence. *See Bettner*, 764 P.2d at 832 n. 2 (observing that the doctrine of res ipsa loquitur does not apply where negligence is not the only reasonable explanation for the accident); *Zimmerman v. Franzen*, 121 Colo. 574, 590, 220 P.2d 344, 352 (1950) (res ipsa loquitur instruction is not appropriate if the

evidence shows there was another proximate or contributing cause of the injury). Therefore, the district court did not abuse its discretion in rejecting the instruction. Moreover, in light of the evidence presented by Ms. Pippin rebutting any potential presumption, the presumption instruction tendered by Ms. Kendrick, like the one at issue in *Devenyns*, would not have been a complete statement of the applicable law in any event.

## C. Juror Misconduct

Ms. Kendrick also contends that the district court erred in denying her motion for a new trial based on alleged juror misconduct. We perceive no such misconduct.

Ms. Kendrick filed a motion for a new trial based on allegations that, during deliberations, the jury foreperson, an engineer, performed calculations regarding Ms. Pippin's speed, distance, and reaction time which she shared with the other jurors.[1] The motion was supported by an affidavit from a consultant retained by Ms. Kendrick who had interviewed jurors following the verdict.

As relevant here, the consultant's affidavit also stated:

- the foreperson had told the other jurors she was an engineer;
- the foreperson had provided her with the calculations, but the consultant had not written them down and did not remember them;
- the foreperson had concluded that Ms. Pippin did not have enough time to avoid the collision; and
- another juror said that the jurors had found the foreperson's calculations helpful.

We review a ruling on a motion for a new trial for an abuse of discretion. *Blecker v. Kofoed*, 714 P.2d 909, 912 (Colo.1986); *Mahan v. Capitol Hill Internal Medicine P.C.*, 151 P.3d 685, 688 (Colo.App.2006).

Even if we were to conclude that the consultant's affidavit alleged facts which, if

true, would entitle Ms. Kendrick to a new trial, the remedy in that circumstance would be a remand for the purpose of conducting an evidentiary hearing on those allegations. *See Destination Travel, Inc. v. McElhanon*, 799 P.2d 454, 457 (Colo.App.1990). Thus, the question before us is whether a hearing on the motion is required.

The district court has broad discretion in determining whether a hearing is warranted on allegations of juror misconduct. *People v. Mollaun*, 194 P.3d 411, 416 (Colo. App.2008). Thus, we will conclude that the district court erred in not conducting a hearing only if we discern that it abused its discretion. *Id.* An examination of an allegation that jurors considered outside information—such as that presented in this case—typically involves a mixed question of law and fact. We defer to the district court's findings of historical fact if supported by competent evidence, but review de novo its legal conclusions. *People v. Harlan*, 109 P.3d 616, 624 (Colo.2005).

The district court made no findings of fact. It essentially concluded as a matter of law that Ms. Kendrick had not alleged facts justifying relief. We are in as good a position as the district court to make that determination, and therefore our review is de novo. If we conclude that the district court erred as to this legal issue, it follows that the court abused its discretion, and we would remand for an evidentiary hearing.

CRE 606(b) limits efforts to challenge the validity of a verdict with evidence pertaining to the jury's deliberations. It provides:

Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial

---

1. The affidavit is not clear as to whether the "reaction time" referred to by the juror was the time Ms. Pippin had to react given the speed and distance or some estimate of how much time a

person ordinarily takes to react under these circumstances, though the former appears more likely.

information was improperly brought to the jurors' attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

■ This rule, which applies in all civil and criminal cases, *Stewart v. Rice,* 47 P.3d 316, 321 (Colo.2002), is broad. Its " 'exclusionary principle reaches everything which relates to the jury's deliberations, unless one of the exceptions applies.' " *Id.* (quoting Christopher B. Mueller, *Jurors' Impeachment of Verdicts and Indictments in Federal Court Under Rule 606(b),* 57 Neb. L.Rev. 920, 935 (1978)); *accord Mollaun,* 194 P.3d at 416.

"The first half of the first sentence of Rule 606(b) represents the embodiment of the common law tradition of protecting and preserving the integrity of jury deliberations by declaring jurors generally incompetent to testify as to any matter directly pertinent to, and purely internal to, the emotional or mental processes of the jury's deliberations."

*Stewart,* 47 P.3d at 321–22 (quoting Arthur Best et al., *Colorado Evidence: 2001 Courtroom Manual* 137 (2000)).

■ "CRE 606(b) has three fundamental purposes: to promote finality of verdicts, shield verdicts from impeachment, and protect jurors from harassment and coercion." *Id.* at 322; *accord Mollaun,* 194 P.3d at 416; *Simpson v. Stjernholm,* 985 P.2d 31, 35 (Colo.App.1998); *see also* 3 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 6:20, at 115 (3d ed.2007) (stating that the policies behind Fed.R.Evid. 606(b), which is substantially similar to CRE 606(b), are protecting the privacy of jury deliberations and ensuring that such deliberations remain free and frank).

■ Where a party seeks a new trial on the basis of a jury's exposure to extraneous prejudicial information, that party must establish at the outset that such information was before the jury. *Harlan,* 109 P.3d at 624. Ms. Pippin argues that Ms. Kendrick failed to meet this burden because the consultant's affidavit is hearsay. We note, however, that affidavits by nonjurors attesting to jurors' statements regarding exposure to extraneous prejudicial information have been found sufficient to require a hearing. *See, e.g., Destination Travel,* 799 P.2d at 455–57; *see also United States v. Benally,* 546 F.3d 1230, 1232 (10th Cir.2008) (considering a defense investigator's affidavit, but concluding that it did not allege any matter as to which the court could permissibly inquire). We need not resolve this issue, however, because even assuming we may consider the consultant's affidavit, we conclude that it does not demonstrate that extraneous prejudicial information may have been before the jury.

■ In reaching this conclusion, we consider only those allegations in the affidavit which relate directly to the nature of the information. We do not consider those allegations which concern what use the jurors may have made of the information or the jurors' deliberations and mental processes generally. *Harlan,* 109 P.3d at 625; *Ravin v. Gambrell,* 788 P.2d 817, 820 (Colo.1990); *Mollaun,* 194 P.3d at 416–17.

Colorado appellate decisions concluding that extraneous prejudicial information was before juries have concerned (1) information obtained from outside the jury room which could have encouraged a jury to decide the case on some improper basis, *see Harlan,* 109 P.3d at 624–33 (passages from a Bible brought into the jury room by one or more jurors); *Ravin,* 788 P.2d at 819–21 (bailiff's statement that jurors could be required to deliberate for as long as two weeks); (2) information from an outside source defining a charged offense, *see Wiser v. People,* 732 P.2d 1139, 1141–43 (Colo.1987) (definition of "burglary" from a dictionary brought into the jury room by a juror); (3) substantive information about evidence from outside sources, *see People v. Wadle,* 97 P.3d 932, 934–35 (Colo.2004) (information from the Internet on uses of an anti-depressant drug); *T.S. v. G.G.,* 679 P.2d 118, 119–20 (Colo.App.1984) (information from a textbook regarding DNA testing); (4) substantive information about

facts contradicting facts in evidence, *see Destination Travel*, 799 P.2d at 455–57 (estimates of appropriate salaries of the plaintiff's employees—facts necessary to the computation of damages); and (5) information about the parties or the circumstances giving rise to the case gleaned from outside sources, *see Butters v. Wann*, 147 Colo. 352, 355–58, 363 P.2d 494, 496–97 (1961) (juror independently investigated drinking habits of and license revocation proceedings involving the deceased); *Montrose Valley Funeral Home, Inc. v. Crippin*, 835 P.2d 596, 597–98 (Colo. App.1992) (deposition testimony that had not been admitted into evidence).

This case does not involve those types of information. Rather, the allegation here is that a juror used her pre-existing, general knowledge of mathematics (and perhaps physics) to analyze the admitted evidence of relevant locations and distances and the speed of Ms. Pippin's vehicle.

The question before us, therefore, is whether a juror's pre-existing personal expertise or knowledge of a general nature—that is, not involving historical or otherwise substantive facts in the case—is extraneous information which the juror may not use or communicate to other jurors in the course of deliberations. We conclude, as have almost all courts which have considered the issue, that it is not. *See Hard v. Burlington Northern R.R. Co.*, 870 F.2d 1454, 1460–62 (9th Cir.1989) (juror's medical knowledge, which enabled him to interpret x-rays admitted into evidence, was not extraneous information); *State v. Aguilar*, 169 Ariz. 180, 818 P.2d 165, 166 (Ct.App.1991) (medical doctor juror's knowledge of alcohol and cocaine intoxication and blackouts, which he shared with the other jurors, was not extraneous information); *Wagner v. Doulton*, 112 Cal. App.3d 945, 169 Cal.Rptr. 550, 551–53 (1980) (diagram of accident scene by juror who was an engineer was not extraneous information where diagram was based solely on the evidence admitted at trial); *State v. DeMers*, 234 Mont. 273, 762 P.2d 860, 863 (1988) (juror's knowledge about the study of bones, which was allegedly used by jurors to speculate about possible angles of bullet deflection and to assess an expert's testimony, was not

extraneous information); *Meyer v. State*, 119 Nev. 554, 80 P.3d 447, 457–58 (2003) (nurse juror's opinion as to likely cause of bumps on victim's head was not extraneous information); *State v. Mann*, 131 N.M. 459, 39 P.3d 124, 127, 132–35 (2002) (engineer juror's calculations regarding statistical likelihood that child impaled himself on a screwdriver (the defendant's theory of defense) were not extraneous information); *State v. Heitkemper*, 196 Wis.2d 218, 538 N.W.2d 561, 563–64 (Ct. App.1995) (pharmacist juror's statements to other jurors about effect of drugs taken by witness were not extraneous information); *but see People v. Maragh*, 94 N.Y.2d 569, 708 N.Y.S.2d 44, 729 N.E.2d 701, 703–06 (2000) (nurse jurors' use of professional expertise in communicating opinion about victim's cause of death to other jurors constituted extraneous prejudicial information).

▆▆▆▆ The courts finding no extraneous information in this circumstance reason that jurors are entitled to rely on their common sense and experience during deliberations, and that this experience necessarily includes their education and professional work. *E.g., Aguilar*, 818 P.2d at 167; *DeMers*, 762 P.2d at 863; *Mann*, 39 P.3d at 132; *Heitkemper*, 538 N.W.2d at 563–64; *see also In re Malone*, 12 Cal.4th 935, 50 Cal.Rptr.2d 281, 911 P.2d 468, 486 (1996) ("It is not improper for a juror, regardless of his or her educational or employment background, to express an opinion on a technical subject, so long as the opinion is based on the evidence at trial."). We agree with this reasoning. Jurors are not automatons. It is neither reasonable nor desirable to expect that they will assess evidence without regard to their own pre-existing knowledge of general application. *See generally* Michael B. Mushlin, *Bound and Gagged: The Peculiar Predicament of Professional Jurors*, 25 Yale L. & Pol'y Rev. 239 (Spring 2007). Therefore, while a juror may not communicate to other jurors personal knowledge of the parties or of historical or otherwise substantive facts pertaining specifically to the case that are not in evidence, a juror may use his or her particular preexisting knowledge of general application in evaluating the evidence. To the extent a party is concerned that specialized knowledge could be employed by jurors to evaluate the evi-

dence, the time for determining whether a juror possesses such knowledge is during voir dire, not after the verdict. *See Hard,* 870 F.2d at 1461.

Here, the juror in question did no more than apply her generally applicable, pre-existing knowledge to the evidence. She did not introduce any new historical fact, nor is it alleged that she consulted any outside source of information. Therefore, the allegations of the consultant's affidavit did not set forth facts falling within the extraneous prejudicial information exception in Rule 606(b).

We are not persuaded to the contrary by the division's holding in *Destination Travel,* the case on which Ms. Kendrick relies most heavily. In that case, the plaintiff introduced evidence of the monthly salaries of its employees as part of its effort to prove damages. A juror told the other jurors, based on his prior business experience, what he believed the appropriate salaries for those employees were. The division concluded that the juror's information was not general knowledge and did not come from evidence introduced at trial. *Destination Travel,* 799 P.2d at 457.

We question whether *Destination Travel* was correctly decided, as the juror in that case merely applied his pre-existing knowledge to the evidence. In any event, we decline to extend the reasoning of that case to the facts here. In contrast to the juror in *Destination Travel,* the juror in this case made calculations based on evidence introduced at trial and knowledge not relating specifically to the facts, but of a nature applicable to an infinite variety of factual circumstances. We perceive nothing about such an analysis which undermines the adversarial system of justice or the right to a fair and impartial jury.

In sum, we conclude that the district court did not abuse its discretion in declining to conduct a hearing on Ms. Kendrick's motion or in denying that motion.

### D. Voir Dire

■ Ms. Kendrick also contends that the district court deprived her of her fundamental right to a fair and impartial jury by unduly limiting the time for her counsel to conduct voir dire. We are not persuaded.

■ The purpose of voir dire is to allow the court and the parties to select as fair and impartial a jury as possible. *Oglesby v. Conger,* 31 Colo.App. 504, 506–07, 507 P.2d 883, 885 (1972). One's right to an impartial jury does not require, however, that counsel be granted unlimited voir dire examination. *People v. O'Neill,* 803 P.2d 164, 169 (Colo.1990). The district court, in the interests of judicial economy, "may reasonably limit the time available to the parties or their counsel for juror examination." C.R.C.P. 47(a)(3). The court is vested with considerable discretion to limit the length of questioning, and we will not disturb its decisions concerning the scope of voir dire absent a showing of an abuse of discretion. *People v. Reaud,* 821 P.2d 870, 871 (Colo.App.1991).

The district court allotted thirty minutes per side for voir dire. Ms. Kendrick provides no explanation why this amount of time was insufficient. This was a relatively simple negligence case involving one claim and two parties. We perceive nothing about the issues in the case which rendered thirty minutes per side inadequate to determine whether the potential jurors could fairly resolve them. *See Luera v. Snyder,* 599 F.Supp. 1459, 1463–64 (D.Colo.1984) (no abuse of discretion in limiting voir dire to twenty minutes per side); *People v. Rudnick,* 878 P.2d 16, 21 (Colo.App.1993).

The judgment is affirmed.

Judge RUSSEL concurs.

Judge CONNELLY dissents.

Judge CONNELLY dissenting.

The undisputed facts—defendant's truck hurdled a median onto the wrong side of the road and crashed into plaintiff's lawfully stopped car—rendered defendant presumptively negligent. Under Colorado's unusually robust version of res ipsa loquitur ("the thing speaks for itself"), defendant should have shouldered the burden of persuading the jury that she was not negligent. Because the trial court denied plaintiff a res ipsa instruction, we should order a new trial.

The elements of res ipsa are: "(1) the event is the kind that ordinarily does not occur in the absence of negligence; (2) other responsible causes, including the conduct of plaintiff and third persons, are sufficiently eliminated by the evidence; and (3) the indicated negligence is within the scope of the defendant's duty to the plaintiff." *Stone's Farm Supply, Inc. v. Deacon,* 805 P.2d 1109, 1114 n. 10 (Colo.1991) *(Deacon).* Colorado law is "clear that when a plaintiff introduces sufficient evidence to establish the presumption of negligence embodied in the doctrine of res ipsa loquitur, the trial court must instruct the jury as to the nature and effect of that doctrine." *Ravin v. Gambrell,* 788 P.2d 817, 822 (Colo.1990).

Colorado applies this res ipsa presumption to "require[ ] the defendant to prove by a preponderance of the evidence that [s]he was not negligent." *Deacon,* 805 P.2d at 1114 n. 10; *but cf.* CRE 301 (presumptions generally shift only the burden of production); *see Ochoa v. Vered,* 212 P.3d 963, 970 (Colo.App. 2009) (despite "tension between *Deacon* and Rule 301," *Deacon* is controlling). Colorado is one of only a few states to "treat res ipsa loquitur as imposing the burden of proof upon the defendant." Restatement (Second) of Torts § 328D, cmt. m (1965); *see Prosser and Keeton on Torts* § 40, at 258–59 (5th ed.1984) (listing Colorado as one of only three states that "have gone further" than others by shifting burden of proof).

The doctrine specifically has been applied to certain types of automobile accidents. For example, the law generally presumes negligence of defendants driving on the wrong side of the road. *Trione v. Mike Wallen Standard, Inc.,* 902 P.2d 454, 459–60 (Colo.App.1995); CJI–Civ. 4th 11:10 (2008). The same presumption may arise when a driver's vehicle following another in close proximity hits the other vehicle in the rear. *Iacino v. Brown,* 121 Colo. 450, 454, 217 P.2d 266, 268 (1950); CJI–Civ. 4th 11:12 (2008).

The res ipsa doctrine is neither limited to nor automatic in rear-end and wrong-way collisions. That the doctrine is not limited to those types of cases is shown by *Eddy v. McAninch,* 141 Colo. 223, 230, 347 P.2d 499, 503–04 (1959) (holding a presumption of negligence arose where the defendant's brakes failed, causing him to run a red light and hit a car making a lawful turn). That the doctrine is not automatic in those types of cases is shown by *Bettner v. Boring,* 764 P.2d 829, 832–35 (Colo.1988) (holding the appropriateness of a rear-end collision instruction "can be determined satisfactorily only on a case by case basis" and instruction was not warranted "on the particular facts" of the case).

The right to an instruction thus turns not on shoehorning the case into a recurring fact pattern but rather on whether particular facts give rise to a res ipsa presumption. There must be "evidence 'which, when viewed in a light most favorable to the plaintiff, establishes that the existence of each element of that doctrine is more probable than not' to establish a prima facie case of res ipsa loquitur." *Ravin,* 788 P.2d at 822 (quoting *Holmes v. Gamble,* 655 P.2d 405, 409 (Colo.1982)). I would conclude plaintiff produced ample evidence on all three res ipsa elements.

The first res ipsa element—that the accident be one that does not "ordinarily" occur without negligence, *Deacon,* 805 P.2d at 1114 n. 10; *Ravin,* 788 P.2d at 822—is easily satisfied here. Ordinarily, cars do not hurdle medians onto the wrong side of the road and crash into lawfully stopped vehicles without driver fault. And there is no dispute as to the third element: defendant owed a duty of care to plaintiff and other drivers on the road that morning.

The only real dispute involves the second element of whether "other responsible causes, including the conduct of plaintiff and third persons, are sufficiently eliminated by the evidence." *Deacon,* 805 P.2d at 1114 n. 10. To satisfy this second element, a "plaintiff need not eliminate every possible cause other than the defendant's negligence." *Ravin,* 788 P.2d at 822. Res ipsa in this context is, after all, a burden-shifting presumption and not a directed verdict. The relevant inquiry is whether the evidence viewed most favorably to plaintiff supports a "prima facie" conclusion, *id.,* that "defendant's negligence was the more probable explanation" for the accident. *Minto v. Sprague,* 124 P.3d 881,

886 (Colo.App.2005) (citing *Montgomery Elevator Co. v. Gordon,* 619 P.2d 66 (Colo.1980)).

The prima facie evidence viewed most favorably to plaintiff sufficiently eliminated causes other than defendant's negligence. Indeed, the only contrary evidence was defendant's own testimony that she encountered unexpectedly icy conditions on a snowy winter morning. Defendant was entitled to present this theory to the jury—and perhaps even entitled to the "sudden emergency" instruction—but her uncorroborated testimony did not defeat plaintiff's prima facie entitlement to a res ipsa instruction.

In my view, the majority applies the second element too strictly. While the evidence must "sufficiently eliminate" other possible causes, the case law makes clear the emphasis is on the adverb rather than verb: to be "sufficient," a plaintiff's prima facie proof "need not eliminate every possible cause other than the defendant's negligence." *Ravin,* 788 P.2d at 822.

I view the undisputed facts of the present case as analogous to the cases, distinguished by the majority, requiring a res ipsa instruction. Among those cases is *Eddy v. McAninch,* where the supreme court held that "a presumption arises that the failure of the brakes to operate resulted from a want of due care on the part of the defendant," but that the defendant's evidence, "if believed by the jury, was sufficient to overcome the presumption of negligence." 141 Colo. at 230–31, 347 P.2d at 503–04; *see also Trione,* 902 P.2d at 459–60 (trial court erred in not giving tendered presumption instruction where towed vehicle swerved into oncoming traffic).

Conversely, I view the cases relied on by the majority as distinguishable. In *Bettner v. Boring,* the presumption was not warranted where the defendant's car veered off a highway, slid into a field, and hit the plaintiff's car that itself had slid off the highway into the field. 764 P.2d at 832–35. Also, a "semitractor-trailer had turned over and was blocking part of the highway." *Id.* at 830–31. There was, in short, unrebutted evidence (including the plaintiff's own experience sliding off the same road) providing a non-negligent explanation for the accident. Nor am I persuaded by the majority's reliance on *Devenyns v. Hartig,* 983 P.2d 63 (Colo.App.1998). The division there did question whether a former version of the wrong-side of the road instruction applied where ice caused a defendant's car to spin out of control. *Id.* at 70. The division ultimately held, however, that the plaintiff's tendered instruction was legally incorrect because it was not limited to a presumption but would have *required* the jury to find negligence. *Id.*

Colorado's res ipsa presumption thus should apply here. I recognize that we lawyers and judges sometimes make things too complex by using Latin phrases and rebuttable presumptions that ultimately involve nothing more than common sense inferences from the facts. The issue in this case was a simple one that jurors were capable of answering without much judicial guidance: did defendant's actions in driving her truck into plaintiff's car fall below a standard of reasonable care? But the res ipsa doctrine has been applied for many years and with particular vigor in Colorado. And the prejudice from lack of a res ipsa instruction was exacerbated by the sudden emergency instruction favorable to defendant. That tenuously-supported instruction heightened the need for a countervailing instruction that defendant had the burden of proving she was not negligent in encountering and responding to the alleged sudden emergency of hitting ice on a snowy road.